## PENN *v.* STATE OF INDIANA.

[No. 29,535. Filed December 6, 1957.]

376

*Robert H. Duffy*, of Terre Haute, for appellant.

*Edwin K. Steers*, Attorney General, and *Owen S. Boling*, Deputy Attorney General, for appellee.

ACHOR, J.—Affidavit was filed by John Peters, father of Hilda Marie Peters, charging appellant with statutory rape on Hilda Marie Peters on or about February 1, 1956, in Vigo County, Indiana. To said affidavit appellant entered a plea of not guilty. Trial was had and appellant was found guilty, as charged, and sentenced to the Indiana State Prison for two to 21 years. Thereafter the appellant filed a motion for a new trial, claiming that the finding of the court was not sustained by sufficient evidence, and (2) finding of the court was contrary to law. The court overruled appellant's motion for a new trial. The overruling of said motion is the only error here assigned.

Under the issues thus drawn the sole question we are required to determine is whether the evidence is sufficient to sustain the finding and judgment.

The appellant was convicted upon the uncorroborated evidence of the prosecutrix, a girl 16 years old. Other state witnesses were her parents, whose testimony contributed nothing to the state's case.

There is here the fact of the birth of a child born out of wedlock, but this did not furnish the necessary corroboration to establish the guilt of this appellant. It established the fact of intercourse with someone, but not with this appellant. The prosecutrix had other "boy friends," one of whom was more or less her "steady."

The testimony of the prosecutrix in this case is unique to say the least. Her uncorroborated story regarding sexual advances made by appellant prior to October, 1955 conformed to the factual opportunity for such relationship. During this time Mrs. Penn (appellant's wife) was working and appellant and prosecutrix were frequently together.

However, Mrs. Penn was not employed after September, 1955, and thereafter there was no opportunity for such relationship between appellant and prosecutrix in the absence of Mrs. Penn. Thereafter, according to prosecutrix, she and Mrs. Penn shared the same bed with appellant. This story regarding her sexual relationship with appellant, during and after October, 1955, is so improbable as to challenge the credibility of her entire testimony.

The testimony of prosecutrix regarding her relationship with Mr. and Mrs. Penn during and after October, 1955, is that Mrs. Penn would call her parents and ask for her to baby sit while Mr. and Mrs. Penn would go out for the evening and that on the occasions when intercourse occurred she would stay over night to be with the children in the morning when Mr. and Mrs. Penn would leave before the children were up. She testified that when Mr. and Mrs. Penn would return from the evening out, appellant would usually go to bed, but that prosecutrix and Mrs. Penn would usually stay up late—popping corn, talking and watching television. They were friends. That, on prior occasions, prosecutrix slept on the davenport in the living room, but that beginning in October she slept in appellant's bed with appellant and his wife. Prosecutrix testified that on these occasions the accused would there have intercourse first with one and then the other, with knowledge of both. Prosecutrix fixes

the time of the offense charged as being the "last" she had "relations" with appellant. This, she said, was the last part of January or the first of February, 1956, the day appellant came home from the hospital after undergoing a hemorrhoid operation. Both appellant and his wife flatly denied the entire story of any sexual relations between prosecutrix and appellant. Prosecutrix stated that she and Mrs. Penn never talked about such relationships or about the subject of sex.

This court was confronted with a situation involving the same principles of law in the case of *Hutchins* v. *The State* (1894), 140 Ind. 78, 86, 88, 39 N. E. 243. In that case appellant was accused of having raped one Mrs. Chappel while she was confined to her bed with a serious illness from which she died. The death occurred on Wednesday. On Tuesday she accused appellant of having committed the offense on Sunday. However, on Monday she spoke of appellant only in terms of great appreciation and, in the presence of other parties, she suffered and requested him "to do offices for her which might be expected rather of a kind hearted woman than of a man." There was disposition on the part of physicians to believe that death was hastened by nervous shock from the "alleged outrage." Yet the court considered that there was opportunity for the alleged act to have been committed by decedent's demented husband. In that case this court reversed the trial court, stating:

> "With the evidence it is utterly impossible to believe that the crime of rape could have been committed on this woman by this man on the Sunday evening previous.
>
> . . .
>
> "The life or liberty of a citizen should not be taken on mere conjecture. The law is that either

shall be taken only in case the right to do so is established beyond all reasonable doubt."

In an Oklahoma case it was said: ". . . The law is that the life or liberty of a citizen shall be taken only in case the right to do so is established beyond all reasonable doubt; and while there is no rule of law which forbids a jury to convict of rape on the uncorroborated testimony of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony, yet the Courts have always recognized the danger of conviction on her uncorroborated testimony, and the testimony of the prosecutrix, if inherently improbable and uncorroborated, will not justify or support a conviction; as the only reasonable conclusion in such cases is that such verdicts are the result of passion or prejudice, and therefore contrary to law. . . ." *Morris* v. *State* (1913), 9 Okla. Crim. Rep. 241, 252-253, 131 Pac. 731.

"Three in a bed" testimony has previously been adjudicated as highly improbable and as having no weight at all by the Supreme Court of New Mexico. *State* v. *Taylor* (1927), 32 N. M. 163, 164, 165, 252 Pac. 984. The New Mexico court stated: ". . . In developing this point, counsel call attention to the unsubstantial nature of the State's evidence, and the lack of corroboration of the prosecutrix' testimony. . . ." After characterizing prosecutrix' story as a "highly improbable narration," the court went on to say: ". . . the judgment in this case is against the law and the evidence, and ought, in justice, to be set aside. . . . We do not weigh the prosecutrix' story against the denial of appellant and his wife. We weigh it in the scales of inherent proba-

bility. Without strong corroboration, it has no weight at all. . . ."

It is not necessary that we adopt and employ a special rule regarding corroboration of testimony based on the fact that this is a rape case, as is urged by appellant. Rather this case can be and is decided upon the basis of the well established rule that judgments must be sustained, within the required standard of proof, with evidence sufficiently credible to be of probative value. This court gave careful consideration to this issue in the recent case of *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641, 644-645, in which this court through Judge Emmert stated:

"The rule of law defining proof beyond a reasonable doubt has been well settled for many years and requires each juror to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the highest concern and importance to his own dearest and most important interests, under circumstances where there was no compulsion or coercion upon him to act at all. *Chambers* v. *State* (1953), 232 Ind. 349, 111 N. E. 2d 816; *Morgan* v. *State* (1921), 190 Ind. 411, 130 N. E. 528; *Bradley* v. *State* (1870), 31 Ind. 492. The standard of a prudent man is that of a reasonable man. If different persons might reasonably arrive at different conclusions from that reached by the trial jury, the verdict will not be set aside for that reason. *Davidson* v. *State* (1933), 205 Ind. 564, 576, 187 N. E. 376. On the other hand if no reasonable man could find the evidence has proved an accused guilty beyond a reasonable doubt, a verdict would not be sustained by sufficient evidence.

When we carefully examine the cases decided in the long history of this court which have reversed convictions because they were not sustained by sufficient evidence, it is apparent that the court was applying a test that some material allegation

had not been proved by substantial evidence so that no reasonable man could say this issue had been proved beyond a reasonable doubt. *Sylvester* v. *State* (1933), 205 Ind. 628, 187 N. E. 669, 670, *supra.*

In the leading case of *State* v. *Gregory* (1936), 339 Mo. 133, 143, 96 S. W. 2d 47, 52, the court analyzed the rule on review to be as follows: 'Now since the test of substantial evidence is whether a jury reasonably could find the issue thereon, the result must depend in some measure upon the degree of persuasion required. In a criminal case liberty and sometimes life are involved, and there cannot be a conviction except upon a finding of guilt beyond a reasonable doubt. Necessarily, therefore, it becomes the duty of an appellate court as a matter of law to decide whether the evidence was sufficient to induce a belief of the defendant's guilt beyond a reasonable doubt in the minds of jurors of average reason and intelligence; and in resolving that question the court undoubtedly can pass on the credibility of the testimony to the extent of determining whether it was substantial in the sense above explained. In no other way can the rights of the defendant be protected. . . . ' "

The question then is whether the story related by prosecutrix, standing alone, was of such credibility as to constitute evidence of probative value upon which any reasonable man could say that the issue of appellant's guilt had been proved beyond a reasonable doubt.

Ordinarily reasonable men know that a wife will not knowingly and willingly share the sex life of her husband. Experience teaches that where another woman enters the sex life of her husband a wife does not remain on good terms with the other woman. She does not thereafter invite the other woman to her home to visit, pop corn, and watch television. Especially she will not share her husband and aid and abet the act by inviting the other woman to her home and accompanying her to the bed of her husband.

In the extremely rare instances where the parties are so depraved that they see nothing wrong with two women sleeping and sharing the sexual attention of the husband of one of them in the same bed, then it is inconceivable that on the occasions thereafter when the women were together they would never mention the experience nor talk about sex.

We conclude therefore that in this case the uncorroborated testimony of the prosecutrix was so improbable and incredible that no reasonable man could say that the appellant's guilt had been proved beyond a reasonable doubt.

Judgment is therefore reversed with instructions to sustain appellant's motion for a new trial.

Emmert, C. J., Bobbitt, Landis and Arterburn, JJ., concur.

NOTE.—Reported in 146 N. E. 2d 240.