Gerald E. WARFIELD, Appellant,

v.

STATE of Indiana, Appellee.

No. 580S157.

Supreme Court of Indiana.

March 9, 1981.

Charles G. Read, Jeffersonville, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Gerald Warfield was tried by jury in Clark Circuit Court and found guilty of three counts of Robbery and four counts of Criminal Confinement. He was sentenced to a determinate period of ten (10) years on each count of Robbery with ten years added to each for aggravating circumstances. These sentences for Robbery are to be served concurrently. He was sentenced to a determinate sentence of ten (10) years on each of the counts of Criminal Confinement with ten (10) years added to each for aggravating circumstances. Each of the sentences for criminal confinement is to be served concurrently; however, the sentences for criminal confinement are to be served consecutively to the sentences for robbery. Warfield appeals.

The evidence reveals that Donna Mitchell, her husband and five-year-old daughter were at their home at 2413 Bishop Road in Jeffersonville, Indiana, on May 26, 1979. Donna Mitchell's mother, Mrs. Pruitt, was also at the residence. The Mitchells were leaving on vacation, and Mr. Mitchell had started to pack the car around 4:30 a. m. The garage was open, the car trunk was open and the car engine was running. A man standing in the hallway with a gun ordered Mitchell to raise his hands. Mrs. Mitchell was getting ready to leave when

she saw the man with the gun in the middle of the hallway. He told her to "hold it" and not to move. This man directed the Mitchells to go into the living room. Mr. Mitchell was told to lie down on the floor. Mrs. Mitchell was ordered to remove his wallet and watch and to tie his hands behind his back with a rope the man gave her. She was then ordered to tie his feet. The gunman checked the bindings and ordered her to come through the house and asked if she had any jewelry. He opened her make-up case, found and took approximately four hundred dollars ($400). He took the rings from her fingers and her earrings. During this entire time he held a gun on her.

In the meantime, Mrs. Pruitt, who had been sleeping in the guest room, heard a man say "hold it". The bedroom door was slightly ajar. She looked out and saw a big man wearing a stocking mask and holding a gun. She crawled into the master bedroom where there was a telephone and made a call. She reached the Clarksville Police who said they would relay her call to the Clark County Police.

Mrs. Mitchell heard the sound of the phone being replaced on a receiver. The robber heard the noise also and asked where it was coming from. She said her mother was in the bedroom. He entered the bedroom and told Mrs. Mitchell to tie her mother to the bedpost. Mrs. Mitchell was then ordered to remove Mrs. Pruitt's wallet from her purse and to give him the money. She was next ordered to go into her daughter's room. The robber removed his gloves, laid down the gun and tied Mrs. Mitchell to the bedpost of the daughter's bed. He asked for a telephone number of someone who could come and untie them. Mrs. Mitchell gave him her father's telephone number. The robber took some keys and then returned to the room to say goodbye. She heard him remove telephones from the wall jacks. The telephones were found later at the garage door. Mr. Mitchell crawled to the daughter's room and Mrs. Pruitt walked into the bedroom after having untied herself.

Sergeant Ronald Ross of the Clark County Police Department responded to a dispatch of an armed robbery at approximately 5:04 a. m. He arrived at 2413 Bishop Lane at 5:13 a. m. He parked his car in front of the house. Officer Haas also responded to this dispatch. Both officers approached the house. Officer Ross went through the garage door to the rear door. As he approached the rear door, the appellant, Warfield, was backing out of the kitchen and backed directly into Officer Ross. They struggled and Ross was disarmed and pushed against the wall. Warfield pointed his gun at Ross' head and said he was going to shoot him. Officer Haas yelled at Warfield to drop his gun and distracted him. The appellant was then disarmed and handcuffed. A vehicle parked approximately 25 feet from the intersection of Scott Road and Bishop Road was found. A license check identified it as being registered to Mr. Warfield. This car was impounded and an inventory search was conducted some time later.

Appellant claims that the jury's verdict in this cause was not supported by sufficient evidence and was contrary to law; that the court committed error in allowing certain items into evidence, and that the trial court erred in sentencing.

### I.

Appellant claims that the jury's verdict was contrary to law in that it was not supported by sufficient evidence that he knowingly and intentionally committed robbery or confinement.

Robbery is defined by Ind.Code § 35–42–5–1 (Burns 1979 Repl.) as follows:

"A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear; commits robbery, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon, and a class A felony if it results in either bodily injury or serious bodily injury to any other person."

The record is replete with evidence that the appellant intentionally took items and cash from Donna Mitchell, Charles Mitchell and Dorothy Pruitt. All of these witnesses testified that they were in fear and that the appellant was armed with a deadly weapon.

Criminal Confinement is defined by Ind. Code § 35–42–3–3 (Burns 1979 Repl.) as follows:

"A person who knowingly or intentionally:

(1) Confines another person without his consent;

.   .   .   .   .

commits criminal confinement...."

Confine is defined by Ind.Code, § 35–42–3–1 (Burns 1979 Repl.) as follows:

"As used in this chapter, 'confine' means to substantially interfere with the liberty of a person."

The evidence revealed that Charles Mitchell's hands and feet were bound on Warfield's orders, Dorothy Pruitt was tied to a bedpost and Warfield tied Donna Mitchell to a bedpost. Tammy Mitchell, age five, was confined by Warfield's actions in tying and holding her family in confinement at gunpoint. It is obvious that the liberty of these four persons was substantially interfered with, without their consent.

Appellant argues that there was no evidence presented to the jury concerning his ability to form the intent to commit robbery or confinement. He bases his claim on the fact that he presented an insanity defense. Appellant is basically arguing that his defense should have been believed.

Lay witnesses testified as to their observations concerning the appellant's condition. It was observed by Officer Ross that the appellant went into a "coma" at the jail and received three or four kinds of medication. Appellant testified that he had severe headaches, comatose states, loss of memory and narcolepsy. Florence Weis had been living with appellant, and she described changes in him over a period of years. She described him as unpredictable, and she thought he couldn't control himself. A trustee at the jail testified, along with other inmates, that Warfield would sleep for days at a time at the jail and could not be awakened.

Dr. Hassi Shina, Clark County Jail physician, testified that Warfield had psychosomatic illness and that he had prescribed medication for Warfield and recommended psychiatric consultation for him. Dr. Shina believed that appellant's symptoms were caused by an anxiety state. Dr. Teodora E. F. Bordador, a court-appointed physician, testified that in his opinion appellant was sane. Dr. Navin P. Patel testified that, in his opinion, appellant was sane. Dr. Patel did not believe appellant had any kind of mental disease or defect.

The issue of insanity was fully presented to the jury and there was substantial evidence to support their finding that the appellant was sane at the time of the commission of these crimes and that he did have the intent to commit these crimes. *Cobb v. State*, (1980) Ind., 412 N.E.2d 728. In addition, there was ample evidence that the appellant was prepared and armed. He took money and items from three persons, tied them up, and removed telephones from the wall jacks. These are not the actions of a person incapable of forming a specific intent. *See Williams v. State*, (1979) Ind., 393 N.E.2d 149.

## II.

Appellant also alleges that the statute requiring him to prove insanity as a defense by a preponderance of the evidence is unconstitutional because it shifts the burden of proof from the state to the defendant. This issue has been thoroughly discussed and decided in the recent case of *Price v. State*, (1980) Ind., 412 N.E.2d 783, which held that the statute being challenged, Ind.Code § 35–41–4–1 (Burns 1979 Repl.), which became effective April 1, 1978, placing the burden of proof of insanity on a defendant is permissible under the United States Constitution and under the Indiana Constitution.

## III.

Appellant objected to the admission of State's Exhibits # 14, # 15, and # 16. He claims that their admission prejudiced him and inflamed the jury.

Exhibit # 14 was a bag containing jewelry, some of which had identification tags, and a stocking. Exhibit # 15 was six strands of rope similar to those ropes used to tie the victims in the present case. Exhibit # 16 was a pry bar which was taken from the Appellant at the time of his arrest. It had been tucked into the waistband of his pants.

█ Appellant denied knowing anything about these items. He argues that these items were improperly allowed as evidence of "other crimes" and prejudiced the jury. We disagree. Exhibits # 14 and # 15 were taken from appellant's car during an inventory search. Exhibit # 16 was removed from him at the time of his arrest. Officer Gerald Crotchett testified concerning the obtaining of these exhibits and their subsequent custody. Appellant's claim is based on the fact that during argument to the court regarding the admissibility of these exhibits the prosecutor mentioned as one reason why these exhibits were admissible was that the defendant had been asked if he had been involved in criminal conduct before. There is no merit to appellant's claim. This discussion was had outside the presence of the jury. They heard none of it and there is no way it could have prejudiced appellant.

█ Appellant was wearing a mask and took jewelry belonging to the victims in the instant robberies and confinements. The rope was similar to rope used to tie the victims. The pry bar was taken from him at the time of his apprehension. Any evidence that connects the defendant with the crime is admissible. *Hill v. State*, (1979) Ind., 394 N.E.2d 132; *Wilson v. State*, (1978) Ind., 374 N.E.2d 45; *Pullins v. State*, (1970) 253 Ind. 644, 256 N.E.2d 553. There was no error in the admission of these exhibits.

### IV.

Appellant next contends that the court abused its discretion in sentencing. He claims the court ignored the factors set forth in Ind.Code § 35–4.1–4–7 (Burns 1979 Repl.) which would have been considered

mitigating factors and improperly gave consideration to other factors which were used by the court to increase the sentence. The criteria for sentencing are as follows:

"*Criteria for sentencing.*—(a) In determining what sentence to impose for a crime, the court shall consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the person.

(b) The court may consider these factors as mitigating circumstances or as favoring suspending the sentence and imposing probation:

(1) The crime neither caused nor threatened serious harm to persons or property, or the person did not contemplate that it would do so.

(2) The crime was the result of circumstances unlikely to recur.

(3) The victim of the crime induced or facilitated the offense.

(4) There are substantial grounds tending to excuse or justify the crime, though failing to establish a defense.

(5) The person acted under strong provocation.

(6) The person has no history of delinquency or criminal activity, or he has led a law-abiding life for a substantial period before commission of the crime.

(7) The person is likely to respond affirmatively to probation or short-term imprisonment.

(8) The character and attitudes of the person indicate that he is unlikely to commit another crime.

(9) The person has made or will make restitution to the victim of his crime for the injury, damage or loss sustained.

(10) Imprisonment of the person will result in undue hardship to himself or his dependents.

(c) The court may consider these factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:

(1) The person has recently violated the conditions of any probation, parole, or pardon granted him.

(2) The person has a history of criminal activity.

(3) The person is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility.

(4) Imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime.

(5) The victim of the crime was sixty-five [65] years of age or older.

(6) The victim of the crime was mentally or physically infirm.

(d) The criteria listed in subsections (b) and (c) of this section do not limit the matters that the court may consider in determining the sentence." [IC 35–4.1–4–7, as added by Acts 1976, P.L. 148, § 15, p. 718; 1977, P.L. 340, § 139, p. 1533.] Appellant claims that he did not contemplate the commission of a crime that threatened serious harm to persons or property; that he had medical, domestic and emotional problems which caused him to act under strong provocation, and that he needed psychological counselling rather than incarceration in a penal facility. He testified that he was unlikely to commit another crime. Appellant contends that therefore the trial court abused its discretion in imposing an aggravated sentence on him.

■ The trial court found that appellant entered the Mitchell residence wearing a mask and carrying a gun loaded with hollow-point bullets. Three people were robbed and bound. Two were bound in the presence of a five-year-old child. After encountering a police officer, appellant refused to surrender, threatened to kill the officer and held his gun to the police officer's head before he was finally disarmed by two police officers. The judge found that the appellant had been convicted of disorderly conduct and that there were seven outstanding warrants for his arrest.

Subsection (d) of the above criteria clearly states that the court is not limited in the matters that it may consider in determining the sentence. The above findings clearly were relevant to the determination of the sentence, and the trial court was not required to accept Appellant's version of the events and his motives.

Appellant also claims that the judge should not have considered that he used a deadly weapon as a factor in sentencing since the crime of robbery, a Class B felony requires that the perpetrator be armed. He contends that allowing the court to use this fact as an aggravating circumstance is a form of cruel and unusual punishment. He also complains that it is error for the court to use these factors in determining whether the sentences should run consecutively or concurrently. Subsection (c) specifically provides that the court may consider these factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment.

In *Inman v. State*, (1979) Ind., 393 N.E.2d 767, 772, this Court stated:

"The court may, upon consideration of relevant facts and information, increase the standard penalties, impose consecutive sentences or both. Furthermore IC, § 35–50–1–2 (Burns 1979), places the determination of whether sentences are to be served concurrently or consecutively in the discretion of the trial court, excepting (b)."

Appellant's other contentions regarding the fact that he was armed being considered as a factor as well as being part of the definition of his crimes have been answered before by this Court. We have held that the trial judge may consider the nature and circumstances of the crime committed in determining what sentence to impose and that this consideration may include the fact that he was armed, and that he threatened human life. *Williams v. State*, (1979) Ind., 395 N.E.2d 239, 249; *McNew v. State*, (1979) Ind., 391 N.E. 607. We do not find that appellant Warfield's sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.R.App.Rev.Sen. 2(1).

Judgment affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.