**William C. GATEWOOD, Jr., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 981S227.

Supreme Court of Indiana.

Jan. 28, 1982.

Lawrence O. Sells, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, William C. Gatewood, was convicted by a jury of robbery, a class A felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.) and attempted robbery, a class C felony, Ind.Code § 35–41–5–1 (Burns 1979 Repl.); Ind.Code § 35–42–5–1, *supra*. He was sentenced to concurrent terms of forty years and eight years in the Indiana Department of Correction. In his direct appeal, he presents the following issues for our review:

1. Whether the verdicts were contrary to law in that the evidence was insufficient to sustain the convictions; and

2. Whether the sentences imposed were erroneous.

The record reveals that on April 1, 1980, sixty-four year old Violet Deer and her sister, seventy-five year old Neva Eggleson, were accosted by an intruder as they entered Eggleson's residence at 1217 Finley Street in Indianapolis, Indiana. The intruder fled with Deer's purse after a brief struggle with Deer, who thwarted his attempt to also abscond with Eggleson's handbag. The subsequent police investigation culminated in defendant's arrest and conviction for the crimes at issue.

The record also reveals victim Eggleson did not testify at trial. Her sister testified Eggleson had perished of a heart ailment in the fall of 1980, roughly five months prior to trial.

## I.

Defendant maintains the verdicts were contrary to law in that the evidence was insufficient to support his convictions. His contention is predicated on various factual bases.

It is well settled that when this Court is confronted with a challenge to the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of the witnesses. Rather, we examine only the evidence most favorable to the state, together with the reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the conclusion defendant is guilty beyond a reasonable

doubt, the verdict will not be set aside. *Schultz v. State*, (1981) Ind., 422 N.E.2d 1176; *Moon v. State*, (1981) Ind., 419 N.E.2d 740. We apply this standard whether the evidence is circumstantial or direct. *Easley v. State*, (1981) Ind., 427 N.E.2d 435.

■ Defendant first argues the conviction for attempted robbery cannot be sustained because there was no evidence to indicate the perpetrator intended to rob Eggleson. It is true, as he contends, that there was no direct evidence to indicate Eggleson ever came face-to-face with the perpetrator.

According to Deer, the intruder's presence was not discovered until the two women had separated inside the house. Eggleson had located herself in the back portion of the house, while Deer, laden with groceries, had gone to the kitchen. It was there that Deer confronted the intruder, who pushed her several times and hit her in the face, knocking her to the floor. Lying stunned and disoriented on the floor, she heard her sister screaming. Deer testified that "about the next thing I recall being truly conscious of was that he was stepping over me." She observed her sister's purse in the perpetrator's right hand as he passed over her; she lunged at the purse, grabbed it, and engaged in a tugging match with the perpetrator, who finally dropped the purse and fled with only Deer's handbag. Deer testified that following the incident, it was necessary for Eggleson to have her eyeglasses re-aligned.

As the state maintains, this evidence is sufficient to support the jury's conclusion that the perpetrator intended to rob Eggleson. The reasonable inferences which may be drawn from the testimony that Eggleson screamed and that her glasses required re-alignment are that the perpetrator either threatened to use or did use force in an encounter with Eggleson. There is no dispute that the perpetrator attempted to take her purse from the kitchen. Pursuant to the standard of review incumbent upon us, it cannot be said the record is insufficient to support the jury's conclusion that defendant intended to rob Eggleson; drawing alterna-tive inferences was a function for the trier of fact. *Cole v. State*, (1980) Ind., 403 N.E.2d 337; *Wise v. State*, (1980) Ind., 400 N.E.2d 114.

Defendant next argues there was no evidence to establish that "bodily injury" was inflicted in the commission of the crime, as is necessary to elevate robbery to a felony of class A status. Ind.Code § 35–42–5–1, *supra*. It is true, as defendant argues, that there is no indication that Eggleson sustained any bodily injury in the course of the crime. Defendant's conviction for the attempted robbery of Eggleson, however, was of class "C" felony status, as is appropriate to an attempted robbery lacking infliction of bodily injury. *Id.*; Ind.Code § 35–41–5–1(a), *supra*.

■ It was defendant's robbery of Deer which was accorded class A felony status. Defendant maintains that Deer's testimony that she suffered abrasions, a "knot" on the head, and recurring headaches several days after the incident is insufficient to constitute "bodily injury" for purposes of Ind. Code § 35–42–5–1, *supra*. His argument must fail in light of our recent decision in *Clay v. State*, (1981) Ind., 416 N.E.2d 842. There, we held that *any* bodily injury suffered by the person robbed is sufficient to elevate the robbery to class A felony status. *Cf.*, *Hill v. State*, (1981) Ind., 424 N.E.2d 999 (injury to bystander must be "serious" in order for class A felony status to obtain).

Defendant attempts to distinguish *Clay* on the basis of the type of injuries demonstrated there. In *Clay*, the victim sustained a blow to his nose whereby he was bruised, suffered a nosebleed for three days, and was troubled by recurring headaches for three weeks. Here, like the defendant in *Clay*, defendant attempts to minimize the victim's injuries, arguing that "Deer did not notice any pain or blood until the police officer pointed them out to her." As in *Clay*, we must reject the argument, for the legislature's language is unequivocal. Defendant's reliance on definitions drawn from case law decided prior to the effective date of Ind.Code § 35–42–5–1, *supra*, and from workmen's compensation decisions, is

misplaced in light of *Clay.* The evidence was sufficient to sustain defendant's conviction for robbery as a class A felony. *Clay v. State, supra.*

Defendant next asserts the evidence was insufficient to establish his identity as the perpetrator of the two offenses. He maintains the evidence reveals the two women suffered poor eyesight, that the description of the assailant provided to police by Deer was general in nature, and that the women's photographic identification of defendant prior to trial lacked credibility due to the suggestiveness of the photographic display.

■ We note the propriety of the pretrial photographic identification was not placed in issue before the trial court, either through a pretrial motion, an objection at trial, or in defendant's motion to correct errors. Any impropriety which might have occurred during that identification has been waived by virtue of defendant's failure to present the issue to the trial court. *Landrum v. State,* (1981) Ind., 428 N.E.2d 1228; *Raspberry v. State,* (1981) Ind., 417 N.E.2d 913.

■ Defendant's claim consequently represents a challenge to the credibility of the witnesses, a matter which, with rare exceptions, this Court is not at liberty to judge. Only when this Court has confronted "inherently improbable" testimony, as in *Penn v. State,* (1957) 237 Ind. 374, 146 N.E.2d 240, or coerced, equivocal, and wholly uncorroborated testimony of "incredible dubiosity," as in *Gaddis v. State,* (1969) 253 Ind. 73, 251 N.E.2d 658, have we impinged on the jury's province to judge the credibility of witnesses.

■ The testimony at issue here is not wholly lacking in credibility, nor does defendant contend it falls within the purview of *Penn* or *Gaddis.* The record reveals that immediately after the incident, the women provided Indianapolis Police Officer Joseph Zeimetz with a description of their perpetrator as a twenty year old black male, approximately six feet tall, medium build, and 165 pounds in weight. The assailant was described as wearing a dark stocking cap with multicolored rings, a dark brown jacket or sweater, and blue jeans.

The following day, both Eggleson and Deer identified defendant as the perpetrator from a group of fifteen photographs. To indicate their identification of defendant, both women signed the back of his photograph.

Defendant argues that little credibility should be attached to the photographic identification because the photograph of defendant, unlike the fourteen others presented to the two women, lacked a white border and consequently called the women's attention to it. In addition, defendant buttresses his challenge to the reliability of the photographic identification with the fact that the night before the trial, Deer was unable to identify defendant at a lineup.

The jury was fully informed of the discrepancy between defendant's photograph and the others included in the display. The jury was informed of Deer's inability to identify defendant the night prior to trial; she attributed her inability to the lapse of roughly one year between the robbery and lineup, as well as her unwillingness to place blame on someone without a positive belief in their identity and guilt.

The testimony establishing defendant's identity was corroborated by the testimony of Indianapolis Police Officer Steven Schacte, a fingerprint examiner. Schacte had compared defendant's fingerprints with those found on a credit card belonging to Deer, which, together with her purse, had been recovered by police. He testified without equivocation that one of the prints found on the credit card could only belong to defendant.

Again, defendant maintains little credibility should be attached to the fingerprint testimony. He suggests that inasmuch as Schacte could not establish when the print had been made, it is possible defendant picked up the card when Deer dropped it at some time. He maintains that had the owner of other prints found on the card been established, the "real assailant could

have been found." Similarly, he challenges the probative value of testimony that he fled when approached by Indianapolis Police Officer Ronald Black three days after the crimes at issue. Defendant posits the argument his flight was likely prompted by the fact that eleven days earlier, Black had arrested him for possession of marijuana.

In light of the standard of review incumbent upon us, these arguments must necessarily fail. Were it otherwise, we would impinge on the assessment of credibility and weight attached to the testimony by the jury, who was fully informed of the foregoing matters and, unlike this tribunal, had the opportunity to judge the demeanor of witnesses. The eyewitness identification of Eggleson and Deer and the corroborative testimony of Schacte were sufficient to sustain the verdict of the jury. *Munsey v. State*, (1981) Ind., 421 N.E.2d 1115; *McCawley v. State*, (1980) Ind., 409 N.E.2d 594.

II.

Defendant maintains the trial court erred in sentencing him to concurrent terms of forty and eight years. His argument is predicated on various bases.

First, he again argues there was no evidence to establish either that he intended to rob Eggleson or that Deer sustained bodily injury sufficient to elevate his crime against her from class C to class A felony status. We have rejected these contentions in our disposition of defendant's challenge to the sufficiency of the evidence.

Next, he asserts the court improperly considered the age of the victims in deciding to exercise its discretionary authority to increase the basic sentences for class A and C felonies. *See* Ind.Code § 35–50–2–4 (Burns 1979 Repl.) (class A felony); Ind.Code § 35–50–2–6 (Burns 1979 Repl.) (class C felony). He points out that Deer was only sixty-four years old at the time of the offense, while the criteria established by the legislature in its definition of "aggravating circumstances" include the "factor that "The victim of the crime was sixty-five (65) years of age or older." Ind.Code § 35–4.1–4–7(c)(5) (Burns 1979 Repl.).

■ As the state argues, however, the record reveals that Eggleson was seventy-five years of age at the time of the offense. As a victim present at the scene, her age was properly considered as an aggravating circumstance in the trial court's decision to enhance the basic penalties. *Harris v. State*, (1979) Ind., 396 N.E.2d 674; *Gardner v. State*, (1979) Ind., 388 N.E.2d 513.

The record also reveals the trial court's decision to enhance the basic statutory sentence was prompted by defendant's prior criminal record and his lack of remorse over the instant crimes. Defendant argues these reasons lack the specificity required of trial courts by *Page v. State*, (1981) Ind., 424 N.E.2d 1021, and *Green v. State*, (1981) Ind., 424 N.E.2d 1014, where this Court stressed that the enhancement of a basic statutory sentence must be accompanied with a recital of the court's reasons, stated with particularity and peculiar to the defendant and evidence before it.

■ As the state maintains, however, defendant has failed to tender a transcript of the sentencing hearing to this Court. Defendant has not argued that the trial court failed to prepare a transcript of the hearing, as required by Ind.Code § 35–4.1–4–3 (Burns 1979 Repl.); pursuant to the statute, the trial court is also required to include within the transcript the statement of its reasons for imposing an enhanced sentence. Without the transcript of the sentencing hearing, we do not reach the question whether the trial court's reasons were stated with sufficient particularity or whether the trial court acted within its discretion in sentencing defendant. It is defendant's burden to present us with a record which is adequate to permit our review of the claimed errors. *Crane v. State*, (1978) 269 Ind. 299, 380 N.E.2d 89; *Bobbitt v. State*, (1977) 266 Ind. 164, 361 N.E.2d 1193. Defendant's failure to tender the transcript of the sentencing hearing constitutes a waiver of his challenge to the sufficiency and validity of the trial court's reasons for imposing the enhanced sentences.

For all the foregoing reasons, there was no error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.