**Phyllis WHITEHEAD, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 684S226.**

Supreme Court of Indiana.

Nov. 18, 1986.

Paul James Newman, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from conviction by a jury of murder and conspiracy to commit murder, Class A felonies. Appellant received concurrent sentences of forty (40) years and thirty (30) years respectively.

Appellant raises seven issues on appeal: (1) whether the evidence was sufficient to sustain the conviction for murder; (2) whether the trial court erred in denying appellant's motion for individual voir dire of prospective jurors and in granting the state's challenge for cause of an eight member sub-panel of prospective jurors; (3) whether the trial court erred in permitting State's witness August Lodholtz, Jr. to testify regarding his reasons for wishing to be placed in federal prison; (4) whether the trial court erred in permitting the State to call Elaine Wallace as a witness and in later allowing her testimony to be impeached by the testimony of the State's witness Charles Jacques: (5) whether the trial court erred in granting State's challenge for cause of juror Margaret Woods; (6) whether the trial court erred in determining that the appellant had partially waived her attorney-client privilege through her testimony at trial; and (7) whether the evidence was sufficient to sustain the conspiracy conviction.

These are the facts from the record that tend to support the determination of guilt. On January 19, 1981, the St. Joseph County Police Department received a call regarding a body located at 26 Rivercrest in Osceola, Indiana. The body was later identified as that of Claude Whitehead and the cause of death attributed to gunshot wounds. The house had not been ransacked and there was no evidence of forced entry.

Approximately one year after discovery of Claude Whitehead's body, one Vicki Lodholtz informed police that her husband, August Lodholtz, Jr., had been hired by the appellant, Phyllis Whitehead, and her sister, Elaine Wallace, to kill Claude Whitehead and that August Lodholtz and David Johnson had in fact killed Claude Whitehead.

August Lodholtz testified at appellant's trial pursuant to a plea agreement with the State of Indiana. He pled guilty to the murder in exchange for a thirty year sentence and the State's guarantee he would serve his time outside of the State of Indiana. Lodholtz had previously testified in the trials of Elaine Wallace and David Johnson and in return the death penalty petition was dismissed.

Lodholtz testified that he met with Phyllis Whitehead and Elaine Wallace to discuss a "big job" and that the appellant offered Lodholtz $5,000.00 to kill her husband, to which Lodholtz agreed. At this time it was also agreed that a motorcycle would be included in the payoff and that appellant would be out of town on the day

of the murder. According to Lodholtz, he then hired David Johnson to kill Claude Whitehead, provided him with a gun, drove Johnson to the scene and picked him up following the murder. On February 3, 1982, the appellant paid $7,000.00 to August Lodholtz.

## I

Appellant contends that the trial court erred in failing to grant her motion to dismiss as to the murder charge and that this conviction was not supported by sufficient evidence.

Appellant's conviction on the murder charge rests upon the use of I.C. 35–41–2–4, aiding, inducing or causing an offense which reads as follows:

"A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
(1) Has not been prosecuted for the offense;
(2) Has not been convicted of the offense; or
(3) Has been acquitted of the offense."

Appellant was charged with *knowingly inducing August Lodholtz to commit an offense, murder, by hiring August Lodholtz to kill Claude Whitehead and August Lodholtz and David Johnson did commit the offense.* Appellant contends that since the State's own evidence indicates she hired August Lodholtz to kill her husband and that August Lodholtz, without her knowledge, hired David Johnson to perform the actual deed, August Lodholtz did not kill Claude Whitehead and she cannot be convicted of murder under the inducing statute given her ignorance of David Johnson's participation.

■ Appellant's argument is not sustained. August Lodholtz testified that he recruited David Johnson, that he provided the murder weapon, that he transported Johnson, gave him instructions and picked him up following completion of the murder. Lodholtz also pled guilty to Claude Whitehead's murder. Lodholtz is clearly guilty

of the murder. And we held in *Harden v. State*, (1982), Ind., 441 N.E.2d 215:

"The law clearly provides that an offense is committed whenever one intentionally or knowingly aids, induces, or causes that offense to be committed. Ind.Code § 35–41–2–4 (Burns 1979 Repl.); *Fielden v. State*, (1982), Ind., 437 N.E.2d 986. We have consistently held that concerted action or participation in a crime is sufficient for this purpose. *Webb v. State* (1977), 266 Ind. 554, 364 N.E.2d 1016; *Jewell v. State* (1974), 261 Ind. 665, 309 N.E.2d 441."

Appellant attempts to circumvent the clear intent of the statute. August Lodholtz committed the offense of murder because he aided and induced David Johnson to commit the offense of murder. Phyllis Whitehead committed the offense of murder because she induced August Lodholtz to commit the offense of murder and August Lodholtz did commit that offense.

Further, an accomplice is criminally responsible for the acts of a confederate that were the natural and probable consequences of their common design. *Harden v. State, supra, Joy v. State* (1984), Ind. App., 460 N.E.2d 551; *Hudak v. State* (1983), Ind.App., 446 N.E.2d 615. It is a natural and probable part of human nature to enlist the aid of others and to share the reward. It is not unusual or unexpected to join with others to complete a task. When one hires another person to commit a crime, the risk that others will become participants is inherent. The trial court's denial of the Motion to Dismiss was correct and there was sufficient evidence to support the murder conviction.

## II

Appellant contends that the trial court erred in denying her motion for individual voir dire. However, she does not show any support for this contention or prejudice to herself. While the opinions and knowledge each juror possesses could potentially influence or taint the other jurors, this potential harm is sufficiently diminished by the voir dire and the judge's charge.

Appellant further contends that when prejudicial information was heard by a sub-panel of jurors, that the trial judge mistakenly allowed them to be challenged for cause and essentially gave the State eight extra peremptory challenges. The statement uttered by a prospective juror indicated that he had talked to someone whose sister-in-law worked for defense counsel and thought the State had insufficient evidence. This statement could be construed as containing inside information and the inference is strong enough to support the judge's excusing for cause. Certainly, had the juror stated he heard the prosecutor had an air tight case, the defense would have been permitted to challenge the panel for cause. Sustaining or overruling a challenge to a juror for cause is within the trial court's discretion. *Stevens v. State* (1976), 265 Ind. 396, 354 N.E.2d 727, *rehearing* 265 Ind. 396, 357 N.E.2d 245; *Riggs v. State* (1976), 264 Ind. 263, 342 N.E.2d 838; *Click v. State* (1950), 228 Ind. 644, 94 N.E.2d 919. As long as such discretion is not exercised in an illogical or arbitrary manner, we will not interfere with the decision. *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964; *see also, Holt v. State* (1977), 266 Ind. 586, 365 N.E.2d 1209. Further, it does not appear from the record that appellant either exercised all her peremptory challenges or asked for additional challenges.

### III

Appellant contends the trial court erred in permitting State's witness, August Lodholtz, to testify regarding his reasons for wishing to be placed in federal prison. Appellant claims this testimony led the jury to speculate appellant was the source of the threats against the witness and was irrelevant to any material fact in issue or appellant's guilt or innocence.

However, the State did not elicit this testimony until redirect. During cross examination appellant delved extensively into the negotiations and substance of August Lodholtz's plea bargain. Appellant further introduced a letter from a deputy prosecutor to the witness emphasizing that the State would do everything possible to place Lodholtz outside Indiana due to his fears for his personal safety. Given the scope of appellant's cross exam, this testimony by the witness on redirect was perfectly permissible. "Once a defendant inquires into a subject on cross-examination, the state is entitled to probe the matter further on redirect to avert a false or misleading impression." *Cronk v. State* (1983), Ind. App., 443 N.E.2d 882, 887.

### IV

Appellant contends the trial court erred in permitting the State to call appellant's sister, Elaine Wallace, as a witness and in later allowing her testimony to be impeached by State's witness Charles Jacques. Elaine Wallace denied any complicity in the death of Claude Whitehead. Nothing in Wallace's testimony was peculiarly beneficial to the State. Wallace further denied being present at a bank when her sister withdrew the funds to pay Lodholtz. State witness Charles Jacques, a teller at the bank in question, testified that in a previous trial he had identified Elaine Wallace as being present when the money was received, thus effectively impeaching Wallace's testimony. If the only purpose of Jacques' testimony was to impeach Wallace, it would have been impermissible. However, Jacques' account also corroborated State's witness Lodholtz as to the transaction in the bank and the presence of Elaine Wallace and was relevant to the conspiracy charge. In considering the issue of relevancy of evidence, there are various guidelines:

"Evidence is relevant if it is material to an issue in the case and tends to make a desired inference more probable." *Smith v. State* (1981), Ind. [275 Ind. 642] 419 N.E.2d 743, 746. "Any evidence that connects the defendant with the crime is admissible." *Warfield v. State* (1981), Ind. [275 Ind. 396] 417 N.E.2d 304, 308. "Evidence having some tendency to prove a material fact is relevant." *Turpin v. State* (1980), Ind. [272 Ind. 629]

400 N.E.2d 1119, 1122. "Evidence is relevant if, in the light of general experience, it logically tends to prove or disprove some issue of fact." *Irons v. State* (1979), Ind. [272 Ind. 287] 397 N.E.2d 603, 606. This Court has held the trial court is accorded wide latitude in ruling on the relevancy of evidence. *Begley v. State* (1981), Ind. [275 Ind. 235] 416 N.E.2d 824; *Snider v. State* (1980), Ind. [274 Ind. 401] 412 N.E.2d 230. If the evidence only inconclusively connects the defendant with the crime, this goes to the weight, not the admissibility, of the evidence. *Johnson v. State* (1980), Ind. [272 Ind. 547] 400 N.E.2d 132: *Crosson v. State*, (1978), 268 Ind. 511, 376 N.E.2d 1136.

*Armstrong v. State* (1982), Ind., 429 N.E.2d 647, 651.

The trial court heard State's offer to prove before permitting Wallace's testimony and did limit the topics and areas the State could cover. Wallace's testimony was corroborative of certain background information also testified to by August and Vicki Lodholtz. While her testimony was not essential to the State's case, the trial court could rightfully determine that its probative value outweighed its prejudicial impact. Admission of the testimony of Elaine Wallace and Charles Jacques was not error.

### V

■ Appellant contends that the trial court erred in granting State's challenge for cause of juror Margaret Woods. During the trial the court received information that several years previously the man the juror was living with had been killed by his daughter, who was also the juror Woods' daughter. This information had not come out during voir dire. When this information was confirmed by the juror, the State tendered a challenge for cause. Juror Woods was subsequently dismissed for cause and appellant argues that since Woods stated it would not affect her judgment, she could not be dismissed for cause. While Woods did respond her experience

would not affect her ability to be fair and impartial, there was a rational basis to support the judge's finding of cause. Woods stated she failed to raise this matter in voir dire because she misunderstood the question, yet she was extremely reluctant to to discuss the incident when she was questioned by the judge. The nature of the events and the juror's past experience are such that the judge could infer bias on the part of the juror irrespective of her response.

Further, even if the judge did mistakenly dismiss Woods for cause, appellant has not shown that she was prejudiced by the action. In *Landers v. State* (1975), 165 Ind. App. 221, 331 N.E.2d 770, 777, the Court of Appeals held:

[The] right is to a jury composed of impartial jurors, and to secure that impartiality Trial Rule 47(B) provides for the calling and impanelling of alternate jurors to replace regular jurors who are unable or disqualified from performing their duties during the course of the trial. Alternate jurors are selected in the same manner as regular jurors, have the same qualifications, are subject to the same examination and challenges, and take the same oath and are prepared at all times to replace a regular juror. *See Turczi v. State* (1973), Ind. [261 Ind. 273] 301 N.E.2d 752. Thus, both regular jurors and alternate jurors are purified by the same process and the integrity of the jury is maintained whether a regular or an alternate juror serves on the jury during the course of the trial.

This is still the controlling law in this state and replacement of juror Woods by an alternate did not prejudice appellant. The right is to a jury composed of impartial jurors and not to a jury of choice.

### VI

■ Appellant contends the trial court erred in determining that appellant had partially waived her attorney-client privilege through her testimony at trial.

Appellant called attorney McLaughlin to the stand and questioned him extensively

about the negotiations and conversations which occurred concerning the division of Claude Whitehead's estate. On direct attorney McLaughlin testified concerning details of certain conversations. The trial court found that:

> ... [T]here are basically three types of things that the privilege will cover.
>
> One is the fact of consultation. And I have ruled that she has waived the fact that she consulted with you.
>
> Second, it is topics concerning which discussions were had. I ruled this morning that there has been a full waiver as to which topics were discussed. Either side may ask whether this was discussed or that was discussed.
>
> As to statements made, I ruled that there's been a limited waiver, as to the topics she covered in her testimony yesterday. And I'm not in a position to recount those for you.
>
> And if there is some area that you need to talk to counsel about before we begin, you may do that.
>
> My finding is that those conversations about which she gave testimony yesterday may be inquired into in full.

It is well settled that the attorney-client privilege is not absolute for all purposes, but is a privilege which belongs to the client and may be waived by the client. *Key v. State* (1956), 235 Ind. 172, 132 N.E.2d 143, 145. Where the client testifies as to a specific communication or offers his attorney's testimony as to that communication, he thereby waives the privilege against disclosure of the whole of the communication. *Id., see also Brown v. State* (1983), Ind., 448 N.E.2d 10; *Stanley v. State* (1982), Ind.App., 435 N.E.2d 54. It was not error to determine that there was a partial waiver of the attorney-client privilege.

### VII

Finally, Appellant asserts the evidence was insufficient to sustain the conspiracy conviction alleging August Lodholtz's testimony was contradictory, unreliable and insufficient.

However, a conviction may be based upon the uncorroborated testimony of an accomplice. The fact that an accomplice is induced to testify by a benefit offered to him goes to the weight of the testimony only. *Coleman v. State* (1975), 264 Ind. 64, 339 N.E.2d 51. Further, in *Rodgers v. State* (1981), Ind., 422 N.E.2d 1211, 1213, we held:

> Defendant's contention strikes directly at the credibility of the witnesses, a matter which with rare exceptions is solely the province of the jury. *Rosell v. State* (1976), 265 Ind. 173, 352 N.E.2d 750; *Lottie v. State* (1974), 262 Ind. 124, 311 N.E.2d 800. Only when this Court has confronted "inherently improbable" testimony, *Penn v. State* (1957), 237 Ind. 374, 146 N.E.2d 240, or coerced, equivocal, wholly uncorroborated testimony of "incredible dubiosity," *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658, have we impinged on a jury's responsibility to judge the credibility of witnesses.

The State presented sufficient evidence for the conspiracy question to reach the jury and the credibility of Lodholtz was determined by the jury. There was sufficient corroborative evidence to support the verdict.

The conviction is affirmed.

GIVAN, C.J., and PIVARNIK, SHEPARD and DICKSON, JJ., concur.