**Dennis HANKINS, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 49S00–8612–CR–1048.

Supreme Court of Indiana.

April 19, 1988.

Belle T. Choate, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Dennis Hankins was convicted by jury in the Marion Superior Court, Criminal Division, Room No. 3, of Robbery, as a class A felony. He was sentenced to a term of forty-eight (48) years imprisonment. He appeals directly to this court, raising two issues for our review:

1. sufficiency of the evidence;
2. alleged error in admitting into evidence a baseball cap which was identified by the victim as the cap worn by Hankins during the robbery.

The facts most favorable to the State show on April 14, 1985, at approximately 10:00 p.m., Edward McDonald and Appellant Hankins were at 6460 North Park Central Way looking for some hubcaps to steal. McDonald and Hankins observed Douglas J. Popp, his wife Claire Popp, and his 14–year–old step-daughter Amy Greenberg pulling into the entrance of the apartment complex in a 1985 silver Cadillac. They were returning from a trip to Chicago. Mr. Popp parked his Cadillac, told his wife and step-daughter to go inside, and began to unload the trunk. Amy got her suitcase out of the car and went with her mother to the front door of the apartment complex. Her mother had her purse in her hand as they entered the hallway of the complex, which was brightly lighted. Mrs. Popp went to the front door of the family's unit while Amy went to the mailbox.

Hankins and McDonald were sitting in a Delta 88 at the time and had decided to steal the Popp's Cadillac because they did not know how to remove the Cadillac's hubcaps. Hankins, who was wearing a jogging suit, tennis shoes, and a baseball cap, exited the Delta 88 and walked by the Cadillac. Popp observed that Hankins was black and that he was wearing a baseball cap and athletic looking outerwear. When he passed the Cadillac, Hankins exchanged a greeting with Mr. Popp.

McDonald observed Hankins walk into the apartment building which Mrs. Popp and Amy had entered. While at the mailbox, Amy heard her mother talking and glanced over to her. Her mother was ap-

proximately twenty (20) feet away. She heard her mother say "no." Amy heard her mother say "no" in a louder voice and then saw a man tugging on her mother's purse. Mrs. Popp struggled to hold onto her purse. Amy began to fight the man along with her mother. As the man moved toward the door Amy grabbed his legs and he fell. The apartment hallway where the struggle took place was fairly well-lighted and Amy was able to see the man's face. Amy observed that he was wearing a light colored baseball cap. Mrs. Popp noticed the man was wearing a cap.

Mr. Popp heard a commotion coming from the hallway of his apartment building shortly after he said hello to Hankins. As he looked up, he saw fast movement through the glass. Walking to his apartment complex, Mr. Popp saw his wife being dragged through the door by Hankins. Popp dropped the suitcase he was carrying and ran toward Hankins. Hankins, who was facing Popp, shot Popp causing Popp to fall to the ground. Mr. Popp had a clear and unobstructed view of Hankins as the outside light was on and the door to the apartment complex was open allowing the light inside the apartment out. Mr. Popp looked up and saw Hankins still pulling the purse. He saw Hankins take his gun, point it at him and shoot again. He got up and ran towards his wife and Hankins. While Hankins was holding onto Mrs. Popp's purse, Mr. Popp tried to get Hankins away from Mrs. Popp.

Hankins ran to the waiting Delta 88, entered the passenger side with Mrs. Popp's purse and McDonald drove away. Mr. Popp was transported to Saint Vincent's Hospital where he subsequently underwent abdominal surgery to have two bullets removed. Police later found a baseball cap at the scene.

## I

Hankins argues the State failed to establish beyond a reasonable doubt that he was the person who committed the robbery and shot Douglas Popp. As a court of review, we do not judge the credibility of witnesses nor reweigh the evidence. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Loyd v. State,* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ Hankins contends that the victims' identification testimony was equivocal and thus insufficient to support his conviction. The three victims were shown a photographic array in which Hankins photograph was not included. They were instructed to look at the photographs and see if they recognized anyone. Amy picked out three photographs as possibilities. Mr. and Mrs. Popp each picked out one photograph. None of the three were able to conclusively state that one of the individuals they had picked out was the attacker. The victims were later shown a second photographic array. Mr. Popp and Amy each picked out two photographs, one of which was a photograph of Hankins. Mrs. Popp picked out two photographs of persons other than Hankins. At trial each of the three victims identified Hankins as the attacker. Inconsistencies in identification testimony go only to the weight of that testimony. It is the task of the jury to weigh the evidence and to determine the credibility of the witnesses. *Anderson v. State* (1984), Ind., 469 N.E.2d 1166, 1169, *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1220, 84 L.Ed.2d 361.

McDonald's testimony supported the victims' identification testimony. McDonald admitted that on the night of the incident, he suggested Hankins accompany him to steal hubcaps. He admits his presence on the scene, but testified Hankins committed the robbery and shot Douglas Popp. He stated Hankins later admitted he shot Popp with "Johnny," his gun. McDonald testified that when he was questioned he initially attempted to relay a message to Hankins to get out of town, and that Hankins gave him $100 of the money he took from the purse. Though he asserted he did not tell anyone, while he was in jail, of his involvement at the robbery, his testimony is dis-

puted by witnesses Jeffrey Winfrey, Ferdinand Edwards, Jr., and Gregory Lacey.

■ Hankins contends McDonald was not a credible witness, citing *Penn v. State* (1957), 237 Ind. 374, 146 N.E.2d 240, 243. McDonald testified so as to reduce his potential incarceration from a period of 20 to 50 years to a period of no more than 4 years pursuant to a plea agreement with the State. However, when a jury is aware of a witness' possible motives or bias, it can use the information to assess the witness' credibility. *Griffin v. State* (1986), Ind., 493 N.E.2d 439, 443; *Webb v. State* (1980), Ind.App., 403 N.E.2d 359, 360. McDonald was questioned, in the presence of the jury, regarding his criminal history and the plea agreement with the State. Under such circumstances the jury was able to weigh McDonald's credibility and to properly consider his testimony.

Hankins arguments constitute little more than an invitation to reweigh the evidence and judge the credibility of the witnesses. The jury was present when the State's witnesses testified and was charged with the responsibility of resolving any inconsistencies in the witnesses' testimony. *Anderson*, 469 N.E.2d at 1169. In a case of conflicting evidence, the trier of fact is not obliged to believe the testimony of the defendant or any other particular witness. It is the prerogative of the jury to weigh the evidence and to determine who, in fact, is telling the truth. *Graves v. State* (1984), Ind., 472 N.E.2d 190, 191. Notably, the jury could have chosen to not credit the victims' in-court identification of Hankins and still have found Hankins guilty based both on the victims' testimony as to what occurred and McDonald's testimony as to the identity of the robber. *See Brown v. State* (1982), Ind., 435 N.E.2d 7. The jury had sufficient evidence to reasonably find Hankins committed the robbery.

## II

■ Hankins argues that State's Exhibit 18, a baseball cap, should not have been admitted into evidence by the trial court because it was not shown to be that of the attacker and was thus not relevant. A trial court in a criminal proceeding has broad discretion in ruling on the relevance of evidence. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 583. Relevant evidence is that which logically tends to prove or disprove some issue of fact. *Id.* Any fact which tends to connect a defendant with the commission of a charged crime is admissible. Moreover, where there is direct testimony identifying an article submitted to prove a fact, sufficiency objections to the article go to the article's weight rather than to the article's admissibility. *Baker v. State* (1984), Ind., 470 N.E.2d 346, 348; *Crosson v. State* (1978), 268 Ind. 511, 516, 376 N.E.2d 1136, 1140.

■ Here, State's Exhibit 18, which was found by police in the hallway of the apartment complex, was relevant to the issue of identification. At trial, Mr. and Mrs. Popp and Amy each testified their attacker had worn a cap. Mr. Popp had described the attacker's cap as being blue or black. However, at trial Popp insisted in his belief that State's Exhibit 18, a tan cap, was the cap which had been worn by Hankins on the night of the robbery. It was within the jury's province to resolve any discrepancy between Douglas Popp's prior description of the cap's color and his testimony at trial. *Anderson*, 469 N.E.2d at 1169. In addition, McDonald testified Hankins had been wearing a cap that night when he entered the apartment building, but when Hankins re-entered the car, McDonald noticed the cap was gone. McDonald identified State's Exhibit 18 as the cap Hankins lost on the night in question. This testimony represents a sufficient foundation to render State's Exhibit 18 admissible. The trial court did not err in admitting the cap.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.