THOMAS *v.* STATE OF INDIANA.

[No. 29,679. Filed December 3, 1958.]

*Cook, Cook, Bayliff & Mahoney* and *Raymond H. Zirkle*, both of Kokomo, for appellant.

*Edwin K. Steers,* Attorney General, and *Merl M. Wall,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from a conviction of public indecency. The appellant was tried by the court and convicted upon the testimony of two small girls, Diane, age seven, and Veronica, age eight, at the time of the alleged offense.

Their story was, that on June 11, 1957, about 1:00 to 1:30 P.M., they left their home to play in the park nearby in the city of Kokomo, Indiana. Diane said they saw a man, the appellant, who waved at them and she waved back, just before they came back home an hour later to get some fishing poles. They then went back to a small stream in the park and were fishing when they again say they saw the same man, the appellant. They state he talked to them, showed them some obscene pictures and made an indecent exposure to them. They immediately became frightened and ran to the home of Veronica and told her mother of the episode. The mother said this occurred "close to 4:00 o'clock" (P.M.).

The police were notified but no one at the time was apprehended. The evidence is vague and uncertain as to just how the appellant was finally identified as the same person the two girls claim molested them on June 11, 1957. Diane said she had never seen the appellant since June 11, 1957, until the day of the trial in the court room (December 19, 1957).

Veronica stated she and her father looked for the man in the park a number of times and she pointed out a car that looked like the one the man had the day the girls fled from him in the park, although there is no evidence they, at the time, noticed or had time to notice any car he might have had. The evidence does not reveal that Veronica ever pointed the appellant

out to her father or the police before he was arrested. Apparently the arrest was made upon her description of the car and the man so far as the record of the evidence discloses.

The father testified that the girls gave him "a very vague description" of the man, but he continued to hunt for him by means of the first two license numbers of the car which he said the girls gave him.

After appellant's arrest, Veronica and her father went to the police station and there she identified the appellant. That was "about two months later." A picture of appellant was taken at the time. This picture was shown to both girls a day or two before the trial. Diane, at one place in the testimony, states she was describing the appellant as she remembered him in the picture, rather than as she remembered the man involved on June 11, although she later corrected this statement.

Both girls were asked to describe the man they saw on June 11. The descriptions were in general, that he was dirty, covered with grease, and his face was covered with whiskers. This hardly supported the description of the appellant at the time of his arrest or at the trial. In attempting to get more details from them at the trial, the girls forty four times answered, "I can't remember" or that in substance.

The appellant took the stand in his own defense and testified he was 35 years old, married and had three small children, a boy age 11 and two daughters, ages 9 years and 2 months. When arrested on July 24, 1957, in the park near a golf course, he said he was hunting golf balls as he frequently did when in the park.

The evidence up to this point as to the identity, cannot be said to be very convincing, even if we overlook

the fact that it came from two small girls with identifications made from two to six months later. There are, however, certain inconsistencies and conflicts in the evidence which strain the plausibility of their identification beyond the limits of trustworthiness.

The appellant proved by independent and unimpeachable evidence that he was working on the day in question for the Continental Steel Company in Kokomo from 7:00 in the morning until 3:30 in the afternoon. On the particular day in question the automatic time card showed he worked from 6:53 A.M. until 3:33 P.M.

There is no possibility the little girls could have seen him and he waved to them, and they waved to him, in the park about an hour after they left their home at 1 or 1:30 P.M., nor is there scarcely any possibility he could have left the Steel Company at 3:33 and arrived at the park, helped the girls fish, moved to another spot, showed them an obscene picture book, and done other things which they report and still have the girls get back home "close to four o'clock." The testimony was, that it would take about fifteen minutes to get to the creek in the park from the Steel Company.

There are other discrepancies in the evidence. Diane said the man had a gold tooth. The appellant never had one.

Counsel in argument admit the difficulty in harmonizing the uncontradicted evidence with the story of the two girls, but urge us to assume they were somewhat misled by the cross-examination. It is true we must recognize that children of that age are easily influenced by suggestion from either side of a controversy. Diane seemed to be carried away with the excitement of the trial. She, for example, related that her grandfather and a boy caught seven fish on one string at a time. At another point, when asked what

room she was in at the trial, she glibly said "308," whereas, in fact, the court room bore no number.

We do not intend any criticism of the little girls, since they exhibit the natural tendencies of children of that age. The law recognizes such immaturity. It says:

> "The following persons shall not be competent witnesses:
>
> "Second. Children under ten (10) years of age, unless it appears that they understand the nature and obligation of an oath." Burns' Sec. 2-1714.

The court found the girls were competent witnesses. Nevertheless, this does not up-grade the credibility of their testimony. It is still subject to the same test in that respect as that of any other child of tender age. We know through common experience and psychology that a usual attribute of children is imagination and that they are easily susceptible to suggestion. Outside ideas adopted by them easily become realities and they honestly believe their imaginings to be true. Burns' §2-1725; 97 C. J. S. *Witnesses*, §58, p. 450.

We will not weigh the evidence on appeal but review it for the purpose of deciding as a question of law, whether or not the evidence meets the test of substantiality on the essentials for a conviction. Mere suspicion of gilt is not sufficient to sustain a conviction, nor is mere opportunity or the bare possibility of an opportunity to commit a crime sufficient. There must be substantial evidence of probative value presented in a criminal trial before a conviction can be sustained. A mere scintilla of evidence is not enough. *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641; *Robertson* v. *State* (1952), 231 Ind. 368, 108 N. E. 2d 711; *Sullivan* v. *State* (1928), 200 Ind. 43, 161 N. E.

265; *Carrier* v. *State* (1949), 227 Ind. 726, 89 N. E. 2d 74; *Martin* v. *State* (1897), 148 Ind. 519, 47 N. E. 930.

We have examined the foregoing cases on the subject and find that through them all, runs the guiding theme that this court will not permit a conviction to stand when an essential element of the necessary proof is based entirely on evidence that is inherently improbable and runs counter to human experience.

We do not weigh the story of the girls against the denial of the appellant, but rather we consider the inherent inconsistency and improbability, particularly as to the essential element of identity as to the appellant. As pointed out in *Baker* v. *State, supra,* where that very issue was involved, some of the most tragic errors of courts of law have been chiefly due to honest but imperfect and overzealous attempts of witnesses in making identifications.

In *Penn* v. *State* (1957), 237 Ind. 374, 146 N. E. 2d 240, 242, we rejected the evidence on the ground that it was inherently improbable and quoted with approval the following:

"The life or liberty of a citizen should not be taken on mere conjecture. The law is that either shall be taken only in case the right to do so is established beyond all reasonable doubt." *Hutchins* v. *The State* (1894), 140 Ind. 78, p. 88, 39 N. E. 243.

Here a man's liberty and his reputable life is at stake, and placed at the mercy of the memories and recollections of two small girls with no corroborating support as to identity whatever. The testimony is directly inconsistent with the unimpeachable and the admitted fact that appellant was working at a factory from 7:00 A.M. until after 3:30 P.M. on the day of the alleged offense.

The evidence of the girls is that the guilty man who molested them was in the park in the early part of the afternoon and was with the girls for some considerable time before 4:00 P.M., if we are to believe their story, while on the other hand, appellant couldn't possibly have arrived there but very shortly before 4:00 P.M.

From an examination of the entire record in this case, we believe the testimony as to the identity of the person charged with the offense is inherently inconsistent with the undisputed facts and so improbable that it does not meet the test required for a conviction.

The judgment of the trial court is reversed and a new trial ordered.

Landis, C. J., Achor, Emmert, Bobbitt, JJ., concur.

NOTE.—Reported in 154 N. E. 2d 503.