**Steven BONDS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1081S270.

Supreme Court of Indiana.

June 22, 1982.

Susan K. Carpenter, Public Defender, Jay Rodia, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Steven Bonds, was convicted by a jury of rape, a class B felony, and burglary, a class B felony. Ind.Code § 35–42–4–1 (Burns 1979 Repl.); Ind.Code § 35–43–2–1 (Burns 1979 Repl.). He was sentenced to concurrent terms of fifteen and ten years in the Indiana Department of Correction for his respective crimes. In his direct appeal, he presents the following issues for our review:

1. Whether the evidence was sufficient to support the jury's conclusion that he committed the crimes charged;

2. Whether the trial court erred when it permitted the state to impeach defendant's credibility with inquiries as to his "habit of entering other people's homes without permission;" and

3. Whether the trial court erred when it gave its final instruction number 13, which concerned the proof necessary to support the conclusion that defendant possessed the intent requisite to the crimes.

The record reveals that at approximately 2:30 a. m. on June 28, 1980, P. P. was awakened from sleep at her residence in Elkhart, Indiana, by the presence of an intruder. She testified that the intruder, whom she identified as the defendant, raped her. Based on her testimony, together with other evidence, the jury concluded that defendant had committed the crimes at issue.

## I.

Defendant maintains the evidence is insufficient to support the conclusion that he committed the crimes of burglary and rape. He specifically argues that the evidence does not support the conclusion that he entered the prosecutrix's dwelling with the intent to commit a felony (the rape), as is necessary to the commission of a burglary. Ind.Code § 35–43–2–1, *supra.* He also contends that the prosecutrix's testimony is inherently incredible and does not support the conclusion that the intercourse occurred by virtue of force, as is necessary to the commission of rape. Ind.Code § 35–42–4–1, *supra.*

Defendant's assertions share a common factual predicate. It is undisputed that for a period of six months, beginning in late 1977, defendant and the prosecutrix had resided together and shared a conjugal relationship. A child was born of the couple's relationship in November of 1978. Eventually, the couple fell into disharmony and ceased residing together.

Between July of 1979 and June of 1980, defendant began regularly calling the prosecutrix on the telephone. Alternatively, the discussions focused on defendant's willingness to resume the previous relationship the couple had shared, his desire for greater visitation rights with his child, and threats to the prosecutrix's well-being. On occasion, the prosecutrix would hang up the telephone, refusing to talk with defendant. The record also indicates that during the period the two had resided together, they had sometimes quarreled, then "made up" and had sexual intercourse together. The prosecutrix testified that on those occasions, she had acceded to defendant's wishes, lest violence or another quarrel ensue.

The prosecutrix testified that on the night of June 28, 1980, when the alleged rape and burglary occurred, she recognized that the voice of the intruder belonged to the defendant. She turned on the light, went to the bathroom, and then met defendant at the kitchen table, where the two discussed Bonds's request to resume his prior relationship with her and the child. She testified that although she had been afraid of defendant until that moment, she no longer suffered that fear at the moment she was rejecting the defendant's proposition to resume their prior relationship. Shortly thereafter, however, defendant became violent when she resisted his attempts to take her to the bedroom. According to the prosecutrix, he struck her with the back of his hand and, while she was screaming, dragged her to the bedroom.

In contending this evidence does not support the conclusion of the jury that defendant committed the burglary and rape, defendant acknowledges the standard and scope of review which govern his contention. When this Court is confronted with a challenge to the sufficiency of the evidence, we are not permitted to either weigh the evidence or judge the credibility of witnesses. Rather, it is our duty to examine only the evidence most favorable to the state, together with the reasonable inferences which may be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the conclusion that defendant was guilty beyond a reasonable doubt, the verdict will not be disturbed. *Gatewood v. State,* (1982) Ind., 430 N.E.2d 781; *Moon v. State,* (1981) Ind., 419 N.E.2d 740.

Defendant's contention that the evidence does not support his conviction for burglary focuses on his mental state at the time he broke and entered the prosecutrix's residence; he maintains that the prior relationship of the parties and the interlude which occurred between defendant's entrance and the sexual intercourse preclude the conclusion that he entered the home with the intent to rape the prosecutrix. In support of his contention, he relies on *Davis v. State,* (1980) Ind.App., 398 N.E.2d 704, and *Nichols v. State,* (1973) 157 Ind.App. 605, 301 N.E.2d 246; those cases stand for the respective and concomitant propositions that the intention to commit a felony in conjunction with a breaking and entering may be inferred from the time, force, and manner of entry, and that the intention to commit a felony therein must exist at the moment of entry.

The validity of the propositions of law enunciated in *Davis* and *Nichols* is not disputed. In the context of the circumstances before us and the standard of review incumbent upon us, however, there is sufficient evidence to support the jury's conclusion that defendant possessed the intent requisite to the commission of burglary when he broke and entered the prosecutrix's residence.

Mindful of the standard of review incumbent upon us, it must be acknowledged that 2:30 a. m., the time when defendant broke and entered the premises, is arguably an unusual time to break and enter for the purpose of discussing a return to a relationship one year past. Additionally, the record reveals that shortly after the prosecutrix discovered the identity of her intruder, she inquired as to the manner in which defendant had gained entry; according to the prosecutrix, defendant replied: "I have ways of getting in." Her subsequent investigation revealed he had entered through a window at the back of the home.

The record also reveals that after the prosecutrix's discovery of his presence and identity, defendant followed her to the bathroom. Then, after each had returned to the kitchen, the prosecutrix described her apprehension:

> "I didn't know what to do, so I said well, what do you want here and I went to the kitchen cupboard and opened it and got some baking soda out and mixed it with some water."

Q. "Why did you do that?"

A. "Because I was scared and I didn't want to sit down, and I didn't know what to do, so I was trying to figure out something to do."

On cross-examination, she conceded her fears subsided as the two began discussing defendant's reconciliation request. She described the events that ensued:

Q. "And after you had gone into the kitchen and prepared this baking soda, what happened next?"

A. "Well, after I drank a little of it, I sat down at the table and I asked him what he wanted, and he said that he wanted me; that he wanted for me and the children to come back to him and leave the state with him, and I told him no, that I would never leave town with him and he said he was going to take the baby, and I said no, you will never take my baby, and that's when he got violent, and he stood up and grabbed me by the arm and pulled me up and hit me in the eye."

\* \* \* \* \* \*

Q. "Which arm did he have a hold of?"

A. "My right arm, and he kept pulling me. He had stood up and then he was pulling me towards the bedroom, and told me that his girlfriend didn't satisfy him and he wanted to make love to me."

Based on the interlude which occurred between entry and attack, the subject matter of the discussion, and the temporary ebb of the prosecutrix's apprehension, the jury might have concluded that the defendant did not possess the intent to rape when he broke and entered.

The jury, however, concluded otherwise. That conclusion must be sustained, for it rests on sufficient evidence. The time and manner of defendant's entry, together with his conduct and statements inside the home, support the inference that his intent to rape was coterminous with his breaking and entering. *Crawford v. State*, (1968) 251 Ind. 437, 241 N.E.2d 795; *Freeman v. State*, (1975) 163 Ind.App. 650, 325 N.E.2d 485; *Compare, Coleman v. State*, (1967) 248 Ind. 137, 224 N.E.2d 47 (evidence of intent held insufficient where defendant entered premises, informed resident he was in wrong apartment, and attempted to escape but was restrained from doing so by prosecutrix). To the extent the jury's conclusion rests on its assessment of the witnesses' credibility, as it inherently must in the context before us, that is not a matter we are at liberty to evaluate; the jury had the opportunity to view the demeanor of the witnesses, an opportunity not available to this Court. The evidence was sufficient to support defendant's conviction for burglary.

■ For similar reasons, we conclude that the evidence was also sufficient to sustain defendant's conviction for rape. His contention to the contrary rests essentially on a challenge to the credibility of the prosecutrix; he maintains that based on the prior relationship of the couple, which he characterizes as "bizarre," this Court should "sift and probe the evidence." He relies on *Thomas v. State*, (1958) 238 Ind. 658, 154 N.E.2d 503, for the proposition that the prosecutrix's testimony is so inherently incredible that it cannot be employed to sustain the rape conviction.

The facts at issue bear no similarity to those present in *Thomas*. There, the testimony of two children that defendant had molested them was discounted on appeal because, due to defendant's employment schedule, he could not have been present at the scene when the molestation allegedly occurred. Inasmuch as the witnesses' version of the events rested on a physical impossibility, the testimony had no probative value. *See also, Gaddis v. State*, (1969) 253 Ind. 73, 251 N.E.2d 658; *Penn v. State*, (1957) 237 Ind. 374, 146 N.E.2d 240.

Here, the nature of the couple's prior relationship does not *ipso facto* render incredible the testimony that the intercourse occurred by force. The prosecutrix explained the reason for her acquiescence on prior occasions; the jury had the opportunity to weigh the testimony and judge the credibility of the prosecutrix *vis-a-vis* the defendant. There was evidence to support the jury's conclusion that the intercourse occurred through the use of force; in addition to the foregoing evidence, the prosecutrix testified that defendant pushed her down onto the bed, pulled off her robe, disrobed himself, forced her to commit fellatio, and ultimately, despite her screams and struggling, forced her to have sexual intercourse with him.

It is well established that a conviction for rape may be sustained solely on the basis of the prosecutrix's testimony. *Munsey v. State*, (1981) Ind., 421 N.E.2d 1115; *McCawley v. State*, (1980) Ind., 409 N.E.2d 594. Based on the standard of review incumbent upon us, the jury's conclusion that defendant raped the prosecutrix is sustained. *Id.*

## II.

■ During the state's examination of defendant, the prosecutor engaged him in the following colloquy:

Q. "Didn't you have a habit of going into people's houses without permission?"

A. "No."

Q. "Just this one time?"

A. "That I went into her house?"

Q. "Yes. Just this one time. This is the only time you have gone into anyone's house without permission?"

A. "In anybody else's house?"

Q. "That's right."

A. "Well, I have, but I already served my time for that."

Q. "Other than burglary?"

A. "Right."

Q. "The burglary and this is the only time you went in anyone's house without permission?"

MR. BOWERS: "That's an illusion to other criminal conduct. There's no evidence of it."

MR. SHEWMAKER: "He answered the question. He brought it up."

MR. BOWERS: "I think he gave a good answer to it."

MR. SHEWMAKER: "Nothing wrong with that."

(Whereupon, discussion was held at the Bench outside the hearing of the Jury.)

Relying on *Ashton v. Anderson*, (1972) 258 Ind. 51, 279 N.E.2d 210, the defendant argues the cross-examination was improper in that it contained improper references to uncharged acts of misconduct.

As the state maintains, however, the record reveals that defendant did not object to the prosecutor's questioning until the matter of his prior acts had been raised for the third time. His failure to object before the question had been twice asked and answered waived his right to challenge the propriety of the questioning; we note defendant

made no motion to strike the prior testimony and admonish the jury to disregard it. *Tinnin v. State*, (1981) Ind., 416 N.E.2d 116; *Dombkowski v. State*, (1967) 249 Ind. 32, 230 N.E.2d 602. There was no error here.

### III.

Defendant maintains the trial court erred when it gave final instruction number 13, which read:

"You are further instructed that the State is not required to make proof of felonious intent, as a fact, by direct and positive evidence. The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the Defendant with the felonious intent charged in the information. A determination of the Defendant's intent may be arrived at by the jury from a consideration of the Defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points."

The record reveals defendant did not object to the instruction prior to the time it was given to the jury. As a general proposition, any error in the instructions which are read to a jury is waived by the failure to make a timely objection. *Jacks v. State*, (1979) Ind., 394 N.E.2d 166; *Buttram v. State*, (1978) 269 Ind. 598, 382 N.E.2d 166; *but see, Drake v. State*, (1979) Ind., 397 N.E.2d 600; *Young v. State*, (1967) 249 Ind. 286, 231 N.E.2d 797.

Defendant seeks to invoke the fundamental error doctrine, however, which permits this Court to review questions not properly preserved for review. *See, e.g., Dooley v. State*, (1979) Ind., 393 N.E.2d 154; *Winston v. State*, (1975) 165 Ind.App. 369, 332 N.E.2d 229; *State v. Craft*, (1977) 52 Ohio App.2d 1, 367 N.E.2d 1221. Whether that doctrine is applicable here, defendant's substantive contention, which was first presented in the motion to correct errors, is without merit.

He argues the instruction was improper because it violated Article 1, Section 19 of the Indiana Constitution, which provides that the jury has the right to determine the law and the facts. He maintains the jury's right was violated by that portion of the instruction which indicated that defendant's intent could be inferred from his conduct and "the natural and usual sequence to which such conduct logically and reasonably points." He suggests that all defendants do not act in a logical and reasonable manner, and that intent cannot always be inferred by deductions based on an actor's conduct.

The state concedes the validity of this latter point, but responds that the instruction merely indicated that intent "may" be inferred by deductions logically drawn from a defendant's conduct and a sequence of events. The state's argument finds support in *Luckett v. State*, (1973) 158 Ind.App. 571, 575, 303 N.E.2d 670, 672, where the contention that the above language was mandatory in nature was rejected:

"Said instruction is clearly not mandatory and leaves the question of intent to be decided by the jury and the instruction was properly given to the jury."

Inasmuch as the instruction was not mandatory in nature, it cannot be said the instruction violated Article 1, Section 19. It merely informed the jury that it could infer intent from the conduct of the defendant; it did not preclude the jury from a contrary approach, nor did it preempt the defendant's ability to argue his conduct was illogical, unreasonable, and bereft of any intent. The instruction merely explained those matters the jury could consider in resolving the factual question of intent; the instruction was therefore consistent with Article 1, Section 19. The trial court did not err.

For all the foregoing reasons, there was no trial court error and its judgment should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.