**Marcus Allen TAM, Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

**No. 71A03–8612–CR–350.**

Court of Appeals of Indiana, Third District.

May 20, 1987.

Robert L. Stephan, South Bend, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

STATON, Judge.

Marcus Alan Tam was convicted by a jury of rape and criminal deviate conduct, and he appeals those convictions, raising three issues for our review:

I. Was there sufficient evidence to support the guilty verdict on each count?

II. Did the trial court err in refusing to give defendant's tendered instructions numbered 1, 4, 5, 6, 7, and 8?

III. Did the trial court err in refusing to instruct the jury on the crime of battery as a lesser included offense of the charged crimes?

We affirm.

I.

*Sufficiency of the Evidence*

When reviewing a challenge to the sufficiency of the evidence, this court will neither reweigh the evidence or judge the credibility of witnesses. Looking only to the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom, we will affirm if there is substantial probative evidence of guilt beyond a reasonable doubt. *Neal v. State* (1983), Ind., 451 N.E.2d 657, 658. The uncorroborated testimony of the victim is sufficient to support a conviction. *Id.*

Caroline Prince testified that she went to the Oar House Tavern to meet some

friends on April 27, 1985. About 2:30 or 3:00 the following morning she decided to leave in order to go to a party. Tam approached Prince and asked her for a ride to his home. Prince did not know the location of the house where the party was being held; she told Tam she would give him a ride home if he would show her the way.

Tam directed her to the party. Prince then proceeded to take Tam home, following his directions. He directed her down a dirt road, where he told her to stop. Tam then grabbed Prince's wrists and told her that "he wanted some pussy."

Prince and Tam remained in the car for quite a while, as Prince tried to convince Tam to let her go. Finally Tam forced her down on the front seat, with her chin tucked under the steering wheel. Prince told Tam that they should get out of the car, and they did so, with Tam still holding Prince's wrists. As they walked down the road, Prince broke free and ran toward a house, but Tam caught her and knocked her down and struck and kicked her. Prince screamed and Tam put his hand around her throat.

Tam dragged Prince into a yard and told her to take off her pants. Tam then placed his tongue in Prince's vagina and afterward put his penis in her vagina. When Tam finished, Prince testified that she feared for her life and, as a result, told Tam that she enjoyed what he did and wanted to see him again the next day. She then asked him to give her the car keys so that she could take him home to get some rest. Tam gave Prince her car keys, and after she took him home she went to the house where she had planned to attend a party and called the police.

Tam admitted having sexual intercourse with Prince that night, but alleged that she consented. He argues on appeal that Prince's testimony was not credible. As we have said, we will not judge the credibility of witnesses. We will override the jury's assessment of credibility only where the testimony is so inherently improbable that it runs counter to human experience, and no reasonable person could believe it. *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 904; *Thomas v. State* (1958), 238 Ind. 658, 154 N.E.2d 503. Tam argues that Prince's testimony was inherently improbable and cannot support his conviction.

■ Specifically, Tam argues that several factors render Prince's testimony incredible. Wendy Kerschner testified that she was at the house where Prince went after she was raped. Kerschner testified that Prince appeared "normal," although perhaps a little nervous. Prince testified that after she left the hospital, she talked to John Minder, a friend, about what had happened, and then she went to Kubiak's tavern, where she talked to more people about the incident. She acknowledged that she did not go home or change clothes after leaving the hospital. Tam presented a witness who testified, in conflict with Prince's testimony, that after she left Kubiak's she went to another bar where she stayed until 1:30 or 2:00 a.m. This witness and another also offered testimony conflicting with Prince's about what she had to drink before the rape and the next day and night.[1]

As for the conflicting evidence about what Prince drank before and after the rape and how late she stayed out afterward, it is for the jury to resolve such conflicts, and to determine credibility. Such conflicts certainly do not rise to the level of making Prince's testimony inherently improbable and incredible.

Tam argues strenuously that the other evidence concerning Prince's behavior and appearance after the rape does rise to this level, because it does "not lend itself to a lady suffering from traumatic effects of

---

**1.** Tam also points to evidence that there were no traces of sperm in Prince's vagina when she was examined after the rape, indicating that he did not ejaculate. Since Tam admitted at trial to having sexual intercourse with Prince, and it is the element of non-consent that he challenges, we fail to see the importance of his ejaculation or lack thereof. He mentions in his brief that without ejaculation there was no penetration and thus no rape. Even if Tam's admission at trial did not preclude him from raising this issue on appeal, it is well settled that the presence of sperm in the victim is not necessary to support a conviction of rape. *Dabney v. State* (1986), Ind., 498 N.E.2d 1225, 1227; *Baker v. State* (1983), Ind., 449 N.E.2d 1085.

rape." While we note that our Supreme Court has recently ruled that expert testimony concerning "rape trauma syndrome" is admissible, *Simmons v. State* (1987), Ind., 504 N.E.2d 575, we will not now rule that such evidence is required to corroborate the victim's testimony. Research has shown that not all rape victims react in the same way. In one study it was found that approximately half the victims studied responded by expressing their emotions through such means as crying, smiling, and acting restless or tense, while the other half responded in a controlled manner, hiding their feelings behind a calm exterior. Burgess & Holman, Rape Trauma Syndrome, 131 *Am. J. Psychiatry* 981 (1974), *cited in* Note, The Admissibility of Rape Trauma Syndrome Expert Testimony in Indiana, 17 *Ind. L.Rev.* 1143, 1148 (1984). *See also* Notman & Nadelson, The Rape Victim: Psychodynamic Considerations, 133 *Am. J. Psychiatry* 408 (1976). We will not establish a code of behavior to which rape complainants must adhere so that their testimony will not be held incredible as a matter of law.

Prince's behavior and appearance did not render her testimony inherently improbable. This evidence, like the conflicting testimony discussed above, was before the jury, and we defer to their assessment of credibility. The evidence was sufficient to support a conviction for rape and criminal deviate conduct.

## II.

### *Tendered Instructions*

Tam contends that the trial court erred in refusing to give his tendered instructions numbered 1, 4, 5, 6, 7, and 8. The giving of instructions is largely within the discretion of the trial court, and in determining whether an instruction has properly been refused we use the following analyses:

1) Whether the tendered instruction correctly states the law, 2) Whether there is evidence in the record to support the giving of the instruction, [and] 3) Whether the substance of the tendered instruction is covered 'by other instructions which are given.

*Spears v. State* (1980), 272 Ind. 634, 401 N.E.2d 331, 334.

Without reciting each instruction refused and each one given, our review indicates that the substance of each of the tendered instructions was covered by other instructions which were given. In his brief, Tam divides the tendered instructions into three subject areas, and that is how we will discuss them.

■ Tendered instructions 1, 4, 6, and 2 concerned the standard of proof and explained the principle of proof beyond a reasonable doubt. The trial court's instructions 4 and 5 explained this principle, and Tam's tendered instruction 3, which was given substantially as tendered, provided further detail. The subject was sufficiently covered.

■ Tendered instruction 5 explained to the jury that Tam's testimony should be evaluated in the same manner as that of any other witness. This instruction was given in modified form, omitting language directing the jury on examining Tam's credibility, and again discussing reasonable doubt. The court's instruction 6 advised the jury on assessing credibility and directed them to attempt to fit the evidence to a presumption of Tam's innocence. This instruction, together with others on reasonable doubt, covered the substance of the omitted language for tendered instruction 5.

■ Tam's tendered instruction 7 informed the jury that an affidavit filed against him was not evidence. The court's instruction 2, read as a preliminary and final instruction, advised the jury that the information filed was merely a formal method of accusing and charging Tam, that it was not evidence, and that the charge would have to be proved by evidence at trial. This instruction more than adequately covers the substance of tendered instruction 7.

## III.

### *Lesser Included Offense*

■ Finally, Tam argues that the trial court erred in failing to give his tendered instruction 10, discussing battery as a lesser included offense of the charged crimes of rape and criminal deviate conduct. The question of giving an instruction on a lesser included offense embodies a two-step analysis. *Roddy v. State* (1979), 182 Ind. App. 156, 394 N.E.2d 1098.

The first step is to determine that the second offense actually is a lesser included offense, that is, that conviction of the crime charged necessitates proof of all the essential elements of the lesser offense plus an added element. *Id.* Battery is such a lesser included offense. The second step requires that there is evidence of probative value from which the jury could find the defendant guilty of the lesser included offense. Evidence of the lesser included offense must be substantial and not in serious dispute, while there must be a serious dispute as to the additional, distinguishing element of the charged offense. *Id.* Evidence of the additional element must not be uncontroverted.

■ Here, Tam testified that he had consensual sexual intercourse with Prince, but he denied knocking her down or using force. Thus, we cannot say that there was a serious dispute that Tam committed rape and criminal deviate conduct, but no serious dispute as to battery. To convict Tam of battery, the jury would have had to disbelieve both Tam and Prince in some respects, and to speculate as to a third course of events on which there was no evidence. *Id.* at 1112. *See also Hash v. State* (1972), 258 Ind. 692, 284 N.E.2d 770, 773. Such a conviction would have represented an unacceptable compromise between those jurors who believed Tam and those who believed Prince. *Roddy, supra,* at 1112. An instruction on battery would thus have been improper, and the trial court correctly refused to offer it.

We affirm Tam's convictions for rape and criminal deviate conduct.

GARRARD, P.J., concurs in result.

NEAL J., concurs.