Harvey J. ALLGIRE, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8804–CR–00392.

Supreme Court of Indiana.

May 21, 1991.

Susan W. Brooks, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was tried to a jury and, upon charges that he had sexually molested his granddaughter, C.A., he was found guilty on Count I, child molesting, a Class B felony, I.C. 35–42–4–3(a); Count II, child molesting, a Class C felony, I.C. 35–42–4–3(b); and Count III, incest, a Class D felony, I.C. 35–46–1–3(a). This jury also found that appellant had sexually molested another granddaughter, J.B., and he was convicted on Count IV, child molesting, a Class D felony, I.C. 35–42–4–3(d). The jury acquitted appellant on Count V, a charge of child molesting involving a neighbor girl, A.F. Appellant bases this direct appeal on five claims of error, which will be addressed in the following order: 1) denial of a defense request for a continuance and 2) admission of evidence of depraved sexual instinct, both of which affect the validity of all of appellant's convictions; 3) preclusion of testimony of a defense witness on the extent of C.A.'s exposure to or knowledge of sex, which affects the validity of appel-

lant's convictions on the charges involving C.A.; 4) admission of the testimony of State's witness Jean Weinheimer and 5) exclusion of the testimony of defense witness Tyra Phipps, both of which affect the validity of appellant's conviction on the charge involving J.B.

I.

### A. Motion for Continuance

During the time intervening between the filing of charges and trial, C.A. and J.B. underwent counseling, and during the discovery period, appellant conducted lengthy depositions of the two girls and their counselors. After their initial depositions, J.B. made another formal statement in defense counsel's office, then both girls were deposed a second time on motion of defense counsel and over the protests of the girls' parents and counselors. Appellant also sought to discover the counselors' notes and records by way of interrogatories, subpoenas duces tecum and motions to compel. The State produced these documents on the morning of trial, and appellant argued to the trial court that the State had violated the court's discovery order and moved for a ruling that the State be precluded from questioning the counselors about information contained in these documents and for a continuance in order to review the documents. The trial court denied the motions, and appellant assigns these rulings as reversible error.

Trial courts have wide latitude in determining whether parties have substantially complied with their discovery orders and will be reversed only on a showing of clear error. *Carter v. State* (1987), Ind., 512 N.E.2d 158. Appellant cites *Sturgill v. State* (1986), Ind.App., 497 N.E.2d 1070, for the proposition that a defendant is entitled to discover statements made to welfare department officials by a child alleged to be the victim of sexual abuse where the child is to testify at trial because those statements could be used for impeachment purposes. *Sturgill* also holds that a conviction will not be reversed unless there is a showing of clear error and resulting preju-

dice. *Id.* at 1072 (citing *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 485).

Appellant has made no showing that he was prejudiced by the court's rulings beyond his bare assertion that it is so. At the hearing on appellant's motions, the trial prosecutor maintained to the court that the documents contained no statements by the children which conflicted with any of their earlier statements or which were exculpatory to appellant. The court denied appellant's motions because appellant had extensively deposed the children and the counselors and because there would be time to review the records before the counselors testified. Although appellant claims that he was prejudiced in the conduct of voir dire and the cross-examination of the victims by not having prior access to the documents, he makes no claim that there were, in fact, conflicting or exculpatory statements in the documents, nor does he point to any specific references contained in them which would have affected the way in which he conducted those examinations. Absent such a demonstration that appellant was actually prejudiced by the court's rulings, we cannot say that the court erred in denying appellant's motions.

### B. Evidence of Depraved Sexual Instinct

Appellant's motion in limine which sought to prevent the State from soliciting or offering evidence of or making reference to sexual conduct between appellant and anyone other than the victims was granted by the trial court as to all witnesses except one. The court reserved its ruling on the motion as to Anita Allgire, who is appellant's daughter and the mother of J.B., until such time as she testified. During the direct examination of Ms. Allgire by the State, she was asked about a statement she had made at a pre-trial deposition. Appellant made a timely objection and called for a ruling on the motion in limine by the court outside the presence of the jury.

After the jury retired, the court conducted a hearing at which it was revealed that Ms. Allgire had stated in a pre-trial deposi-

tion that she believed J.B. when the girl told her about the alleged sexual assault because appellant had made similar advances toward her when she was a teenager. Ms. Allgire's previous statement was to the effect that appellant had put his hands down her pants after she had stolen something from a grocery store. The State argued to the court that this statement was admissible under the depraved sexual instinct exception to the general prohibition against the admission of evidence of prior bad acts. Both counsel agreed that, if questioned as to the deposition, in all likelihood Ms. Allgire's in-court testimony would be that her prior statement was a falsehood. Defense counsel argued that because the witness was expected to repudiate the prior statement, it was not admissible under the depraved sexual instinct exception because the prior statement was not true. The trial court ruled that if Ms. Allgire's trial testimony was consistent with the prior statement, the evidence was admissible under the exception and that if her testimony differed, the State could use the pre-trial deposition to impeach her with her prior inconsistent statement.[1]

The jury then returned, and the State called Ms. Allgire's attention to her pre-trial deposition and asked her if she had at that time made reference to an incident which had occurred between her and her father. The following colloquy then ensued:

Q: What was that incident?

A: That my dad had tried it with me, but it did not happen. I did it because I was—did it because I was jealous and I knew that if—

Q: What did you do because you were jealous?

A: What did I do? I said that about my dad and it's not true. I did it because I wanted sympathy and I wanted more attention than any of the other kids.

Q: At the time that you made that statement on December 8th, were you making a truthful statement?

A: No, I was not.

As at trial, appellant's argument on appeal is that Ms. Allgire's testimony does not fall within the depraved sexual instinct exception because Ms. Allgire denied in her trial testimony that the sexual advance occurred and that the evidence was therefore erroneously admitted and prejudicial, necessitating a reversal of his convictions.

*Peckinpaugh v. State* (1983), Ind., 447 N.E.2d 576, is directly on point and controls this question of admissibility. The defendant there was convicted of committing criminal deviate conduct, battery, and child molesting on two of his children. The charges were based on sworn statements the children had given to the police. At trial, both children testified that they had lied to the police and that the pre-trial statements were completely false. This Court found that the pre-trial statements could properly be used for impeachment purposes and further that they were admissible as substantive evidence:

> The [children's pre-trial] statements constituted the only evidence of the corpus delecti of the charges and the only evidence of the identity of the perpetrator. They were classic hearsay accounts, which the declarants, while acknowledging having made them, nevertheless repudiated in court. Subsequently, the declarants were subjected to cross-examination. Upon this state of the record, the statements were admissible as substantive evidence under *Patterson v. State* (1975), 263 Ind. 55, 57–58, 324 N.E.2d [482], 484–85.

*Id.* at 578. Here, Ms. Allgire acknowledged at trial that she made the pre-trial statement, reiterated the substance of that statement, then immediately repudiated it. Under *Peckinpaugh*, the statement from her deposition was admissible for purposes of impeachment and of proving guilt.[2]

---

1. The court also ruled that the State was to tailor its examination so as not to elicit that part of the pre-trial statement in which Ms. Allgire stated that she believed J.B., as that would constitute impermissible bolstering. *Stewart v. State* (1990), Ind., 555 N.E.2d 121.

2. One distinction between this case and *Peckinpaugh* must be noted. After this Court deter-

Appellant also argues that the evidence did not demonstrate that he had exhibited a depraved sexual instinct toward his daughter and that therefore the trial court erroneously received Ms. Allgire's testimony as evidence of such an instinct. On cross-examination, defense counsel reviewed Ms. Allgire's pre-trial statement with her as follows:

> Q: .... I asked you what happened, and I said, I know this is real personal. You had said that he had tried it with you and you said, Answer: tried to stick his hand in my pants. That was after I stole something from [A & P].... [D]o you remember that?
>
> A: Uh-huh.

Appellant maintains in his brief that Ms. Allgire's testimony was that "the defendant once tried to put his hands in her pants to determine whether she was concealing merchandise she had stolen from a store" and that this could not be considered evidence of a depraved sexual instinct. We reject this characterization of Ms. Allgire's testimony. She employed the sentence construction, "[appellant] tried it with ___" several times in her testimony, and the State ascertained her meaning as follows:

> Q: What did [J.B. and another granddaughter] tell you?
>
> A: That Dad tried it with [J.B.]
>
> ....
>
> Q: What did you understand them to mean by "it"?
>
> A: Molested.

When Ms. Allgire stated that appellant had "tried it" with her when she was a teenager, her meaning was that he had molested her, and this testimony was therefore admissible under the depraved sexual instinct exception. This exception allows the admission of evidence of certain kinds of prior sexual conduct which would otherwise be barred by the general prohibition against evidence of prior bad acts because "[a]cts showing a perverted sexual instinct are circumstances which with other circumstances may have a tendency to connect an accused with a crime of that character." *Kerlin v. State* (1970), 255 Ind. 420, 424, 265 N.E.2d 22, 25 (quoting *Lovely v. United States*, 169 F.2d 386, 390 (4th Cir.1948)). This Court recently stated that "[t]he ultimate test of admissibility is whether or not the evidence of prior misconduct actually has that particular relevance, signified by the legal labels of each category of exception, which relevance is deemed to outweigh the tendency to prejudice the fairness of the proceeding." *Stewart v. State* (1990), Ind., 555 N.E.2d 121, 124.

The evidence here had that quality of relevance which rendered it admissible under the depraved sexual instinct exception. The proffered uncharged acts need not be identical to those charged; it is sufficient that the same sexual instinct is involved. *Id.* Appellant was charged with performing cunnilingus on C.A., his granddaughter, and with fondling her genitals and breasts; he was charged with fondling the breasts and genitals of J.B., also his granddaughter. The proffered evidence of depraved sexual instinct was that appellant had put his hands into the pants of another female family member, his youthful daughter. This conduct is sufficiently similar to the charged acts to exhibit the same perverse sexual instinct.

---

mined that the pre-trial statements were admissible in *Peckinpaugh*, we went on to determine whether the defendant's convictions could be sustained on the basis of those statements. We stated there that

> a criminal conviction [can] not be sustained if dependent upon repudiated hearsay evidence admitted under the exception of *Patterson v. State, supra,* standing alone[.] ... [T]here must also be present substantial evidence of probative value from which the trier of fact may reasonably infer that the out of court statements are credible.

*Id.* at 581. Appellant cites *Laswell v. State* (1986), Ind., 494 N.E.2d 981, for the same proposition. The sufficiency analysis which was necessary in those two cases, however, is not necessary here. First, appellant has raised no appellate challenge to the sufficiency of the evidence; second, even had that issue been raised, appellant's convictions were not dependent on Ms. Allgire's repudiated evidence standing alone. Unlike the repudiating witnesses in *Peckinpaugh* and *Laswell*, Ms. Allgire was not the alleged victim of the charged crimes, and her testimony did not constitute the sole or primary evidentiary basis of appellant's guilt.

The trial court did not err in permitting the State to question Anita Allgire about the statement she made in her pre-trial deposition.

## II.

### *Limitation on Questioning of Defense Witness*

Appellant argues that a ruling by the trial court prevented him from presenting evidence that C.A. had knowledge of or had been exposed to sex from sources other than himself, which evidence he maintains was crucial to respond to testimony by State's witnesses that children will not lie about matters to which they have not been exposed.[3] Anna Leohr, who is appellant's daughter and the aunt of the two victims, was called by appellant to give her testimony on this issue. In his brief, appellant makes the following statements regarding Ms. Leohr's testimony:

> The defendant asked Ms. Leohr if she knew whether Pamela Allgire, [C.A.'s] stepmother, had ever discussed sex in [C.A.'s] presence. (R.p. 927). The State objected on the ground of relevancy, and the trial court sustained the objection. (R.p. 928).... [T]he trial court erred when it sustained the State's relevancy objection and precluded defense counsel from questioning Anna Leohr about her knowledge of [C.A.'s] exposure to and knowledge of sex after the State opened the door on this issue.

This is a misstatement of the events at trial. The record reflects, at page 927, that the following exchange took place:

> Q:  Are you aware, or do you have any knowledge as to whether or not Pam talked about sex?
> [The State]: I would object to the question on the grounds that it is leading.
> The Court: Sustained.

The examination continued uninterrupted briefly. The following question and answer appear at the bottom of page 927 of the record:

Q:  And how would you describe Pam?
A:  How would I describe her?

The continuation of the examination and the following colloquy appear at page 928 of the record:

> Q:  Yes.
> A:  Honestly? She's a heavy—
> [The State]: I would object to this question. It serves—
> The Court: The objection is sustained.
> [Defense Counsel]: Your Honor, if I may—
> The Court: A description of this witness is completely irrelevant to any issues in this trial.
> ....
> [Defense Counsel]: (At the bench with the State's attorney and out of the hearing of the Jury) Your Honor, my purpose for getting into Pamela Allgire is that I believe that there is much evidence with regards to [C.A.'s] knowledge regarding sex. That is an issue that was discussed by [the counselors] as to the children's knowledge about sex, and I believe that a child's knowledge about sex is an extremely relevant issue.
> The Court: Not that way, it isn't. The objection is sustained.

Defense counsel thereafter abandoned her efforts to elicit testimony from this witness on this topic and proceeded with the examination on another point.

Appellant's argument is that the trial court erroneously limited his counsel's examination of Ms. Leohr. First, the initial question to Ms. Leohr, contrary to appellant's contention, did not ask whether Pamela Allgire talked about sex in front of C.A., and second, the State's objection to that question was not sustained on relevancy grounds. The trial court did not rule that appellant was precluded from presenting his evidence; rather, the court ruled that he must get this testimony into evidence according to the rules of procedure by way of properly phrased questions designed to elicit relevant, admissible testimo-

---

3. It should be noted, however, that this testimony was elicited by appellant himself during cross-examination of the State's witnesses, not by the State on direct examination.

ny. The governance of the examination of witnesses in a manner which ensures adherence to the rules of evidence and procedure is the responsibility of the trial court, and the court is accorded wide latitude in carrying out that responsibility. *Pittman v. State* (1982), Ind., 436 N.E.2d 74. The rulings on both of the State's objections were clearly correct; there was no error.

### III.

### A. *Admission of Jean Weinheimer's Testimony*

■ Count IV charged that appellant molested his granddaughter, J.B. In the first of three pre-trial statements, J.B. stated that appellant put his hand into her pants and under her top and fondled her. Members of the Allgire family later contacted defense counsel, and during a second formal statement, which was taken in counsel's office and without the knowledge or attendance of a representative of the State, J.B. recanted her earlier account. A third formal statement, another deposition, was subsequently taken, and again J.B. recanted her original story. At trial, J.B. acknowledged having made the accusation against appellant, but again repudiated that initial statement.

Jean Weinheimer was J.B.'s counselor, and she was called by the State subsequent to J.B.'s court appearance. The substance of her challenged testimony was that children who report sexual abuse and are not thereafter supported by their families often recant the original report and that some incest victims, after reporting the abuse and observing and experiencing the devastation the report has on and among other family members, will abandon efforts to halt the abuse and will, in fact, allow it to continue in an attempt to restore and preserve the larger family unit, a behavioral pattern of reaction known as child abuse accommodation syndrome.

Appellant argues that this testimony was erroneously admitted by the trial court, contending that Ms. Weinheimer was not properly qualified by the State to give expert testimony and that the testimony giv-

en went beyond that which is permissible from a lay witness. We do not reach the merits of these contentions, however, because appellant failed to preserve these issues for review with timely objections.

In order to preserve an evidentiary question for review, a proper objection must be made at the time the allegedly improper question is asked or the allegedly inadmissible evidence is offered. *Smith v. State* (1983), Ind., 443 N.E.2d 1187. Although the general rule is that an objection to a question must be lodged before the answer is given, this Court has recognized an exception where the objectionable answer could not have been anticipated. *See State v. Edgman* (1983), Ind., 447 N.E.2d 1091; *Johnson v. State* (1982), Ind., 432 N.E.2d 1358. A review of the record here clearly shows that appellant's situation does not fall within that exception as it is evident that this witness's testimony was anticipated by appellant and his counsel to be objectionable and subject to challenge from the very outset. Defense counsel objected that Ms. Weinheimer was unqualified to testify as an expert witness after she was called to the stand and sworn in, but before the State began its direct examination of her. The trial court correctly ruled that this objection was premature, there having been no testimony, either lay or expert, elicited from the witness upon which it could rule.

Later in the examination, defense counsel objected to a question by the State which sought to discover whether Ms. Weinheimer was familiar with patterns of behavior among children who report incestuous sexual abuse. The trial court correctly overruled the objection because the question could properly be answered in a yes-no fashion from the witness's personal knowledge. After the question was repeated, Ms. Weinheimer answered affirmatively, then, without pausing for the State to pose its next question, went on to relate the information concerning recantation summarized above. The proper time for appellant to have interposed his objection was the point at which Ms. Weinheimer's testimony went beyond the scope identified by the

court's prior ruling as permissible and proceeded to relate the information which he actually believed to be objectionable. *Cf. Harrington v. State* (1984), Ind., 459 N.E.2d 369. Further, appellant did not ask that the court show a continuing objection to this evidence and did not make a motion to strike either following Ms. Weinheimer's answer to this question or at the conclusion of her direct testimony.

No objection whatsoever was lodged before or after the question was asked or the answer was given concerning child sexual abuse accommodation syndrome, which precludes our review of this alleged error. *Edgman*, 447 N.E.2d 1091.

### B. Exclusion of Tyra Phipps's Testimony

■ Appellant called Dr. Tyra Phipps and, after eliciting from her the details of her education and professional experience, moved that the court qualify her as an expert on child sexual abuse. The trial court ruled that Dr. Phipps was not sufficiently qualified to give expert testimony on that subject. Appellant then made a lengthy offer to prove and moved that the court qualify Dr. Phipps as an expert on child psychological development; this motion was also denied. Appellant argues that the trial court erred in ruling that this proffered witness was not qualified to testify as an expert on either of these subjects.

Dr. Phipps has her doctorate in adult education, counseling and higher education, a master's degree in communications, and a bachelor's degree in speech/theater and physical education. At the time of trial, she was the director of the General Studies Program at IUPUI, a program in which returning adult students design their own degrees. Previous to that, Dr. Phipps had worked in the Indianapolis Public School system, first in a career guidance program, then as consultant with curriculum and supervision doing research on IPS students. According to Dr. Phipps, that research focused on

> intervention strategies that in fact would hopefully show that if you intervened at

a strategic time in the life span of the adult, and that would be early years, adolescent years, that if you found that person successful placement on a job, ... if you found something good, suitable for that individual, meaningful work, that in fact you could sometimes compensate for a lack of what the environment may not have provided at an early age.

This research program brought her into contact with some 2000 students whom Dr. Phipps described as abused, referring to verbal, emotional, or sexual abuse. About twenty of the children in the group had been sexually abused. Dr. Phipps stated that the children received group counseling

> which consisted of evaluation, psychological evaluation that's minimal in nature, ... then, however, you can do a number of things with testing for a career assessment ... once students were tested, then it was a matter of putting them into groups to discuss what their best interests were....

In response to preliminary questions put to her by the State, Dr. Phipps testified that her primary focus has been toward adult education and their vocational problems, but that "it took working with the children and with their problems and then adolescent to get to the point where [she] could do research on adults." Defense counsel also established that Dr. Phipps was a former classroom teacher, that she has been qualified to testify as an expert in other child abuse cases, and that she has done counseling with child victims prior to their testimony in sexual abuse trials.

Generally, the admission of expert testimony is within the sole discretion of the trial court, and its ruling will be reversed only for abuse of that discretion, *Henson v. State* (1989), Ind., 535 N.E.2d 1189, and on the state of this record, we cannot say that the trial court abused its discretion by refusing to qualify this witness as an expert. It appears that the sexually abused children counseled by Dr. Phipps constituted only a small subgroup of children targeted for study and that the counseling was done with an eye toward career guidance and, ultimately, toward the ascertainment of

how adults and their career choices are affected by experiences and opportunities during childhood and adolescence. The trial court was within its discretion to exclude from evidence this witness's opinion testimony on child sexual abuse.

Appellant then attempted, again unsuccessfully, to qualify Dr. Phipps as an expert in the area of child psychological development by way of an offer to prove. He argues on appeal that this witness's testimony was offered to present to the jury his theory of the case, namely, that

> children, particularly between the ages of nine (9) and thirteen (13), can be greatly influenced by peer pressure. The peer pressure in this case was that exerted by the older children ... on the younger children ... to play the imaginary "sex games" with Grandpa, Harvey Allgire[,]

and that the trial court's exclusion of this testimony was error and acted to deny him a fair trial.

A trial court is not obliged to admit opinion testimony proffered by a defendant simply on the basis that that it presents his theory of the case. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. A trial judge may allow a properly qualified expert witness to express an opinion when it is based on knowledge or experience beyond that of the average juror and it is likely that the expert's informed opinion will aid the jury. *Stewart v. State* (1988), Ind., 521 N.E.2d 675. The trial court here found that the proffered witness was not properly qualified to render an opinion on the subject of child psychological development and, even assuming that the predicate of proper qualification as an expert in this area was satisfied, the court did not err in excluding the testimony of Dr. Phipps because the evidence presented in the offer to prove cannot be characterized as "likely to aid the jury."

Expert testimony presented in sex crime cases typically falls into one of two general categories: testimony elicited from medical or laboratory personnel which tends to establish whether a sexual act has taken place and which thus is evidence corroborative of or contradictory to that of the prosecuting witness, *see, e.g., Holt v. State* (1984), Ind., 463 N.E.2d 466 (testimony of forensic scientist that rape victim had had intercourse within forty-eight hours of medical exam admissible, in part, to establish an element of the crime), and testimony elicited from psychologists or psychiatric social workers which describes "clinically observed behavior patterns" typical of victims of sex crimes and which, again, constitutes evidence which corroborates or contradicts the purported victim's accusation, *see, e.g., Simmons v. State* (1987), Ind., 504 N.E.2d 575 (evidence of behavior consistent with rape trauma syndrome as corroborative); *Henson*, 535 N.E.2d 1189 (absence of evidence of behavior consistent with rape trauma syndrome as contradictory).

The testimony propounded in the offer to prove was of a very general nature, consisting of, essentially, a discourse on the susceptibility of children to suggestion and to peer pressure and on their tendency to fantasize. This testimony was not limited to a particular class of children, expert commentary about which would be relevant to trial of the issues presented, i.e., those who have been sexually abused, nor was it confined to identifying scientifically or clinically observable physical or behavioral manifestations, the presence or absence of which are indicative of whether a person has been subject to a particular experience. Rather, the testimony at issue here seems to have been more along the lines of a treatise on factors which might render statements on virtually any topic made by any child unreliable. This testimony does not have the probative character of other expert testimony which is admitted to aid the jury in its determination of whether purported victims actually suffered the sexual abuse which they charge.

Neither can Dr. Phipps's testimony be characterized as an aid to the jury in their task of determining the credibility of witnesses. This Court has recognized that the peculiar difficulty presented when children are asked to testify in sex crime trials justifies a limited exception to the general prohibition against one witness comment-

ing on the credibility of another witness. In such cases, an adult witness, who need not be qualified as an expert at all but who is shown to be connected with the child, such as a parent or teacher, may be permitted to testify whether this particular child witness tends to fantasize or exaggerate because such testimony will "facilitate an original credibility assessment of the child by the trier of fact." *Lawrence v. State* (1984), Ind., 464 N.E.2d 923, 925. Dr. Phipps was not acquainted with any of the child victims here, nor did she interview or counsel with them prior to trial. Her only knowledge of these children came from reviewing cold transcripts of deposition testimony. Dr. Phipps was not competent to testify as to the propensity of these particular girls to fantasize or exaggerate, and the trial court did not err in barring testimony which was simply a discourse on influences which might negatively affect the inclination of children to tell the truth and which would in no way aid the jury in making its original credibility assessment of any of the child witnesses here. *Id. See also Dougherty v. State* (1983), Ind.App., 451 N.E.2d 382.

Appellant also argues that the trial court refused to qualify Dr. Phipps as an expert, in part, because she had had no personal contact with any of the victims. If this had been the court's ruling, it certainly would have constituted error as this Court has held that a properly qualified expert witness is not required to have firsthand knowledge of the facts at hand. *Henson,* 535 N.E.2d at 1191. A careful reading of the entire transcript of Dr. Phipps's appearance shows, however, that appellant has misinterpreted the trial court. Appellant attempted to qualify Dr. Phipps as an expert, first in the the area of child sexual abuse and then in the area of child psychological development. In a colloquy between the court and defense counsel that followed the first attempt and the court's ruling that the witness had not been qualified, the court stated that if Dr. Phipps were properly qualified as an expert, counsel would be allowed to propound hypothetical questions based on the facts of this case and call upon the witness to render an

opinion, but that, in the absence of proper qualification, this witness would not be allowed to testify because she had not examined any of the victims and therefore could not properly give lay testimony based on her personal knowledge of the case. This explanation by the trial court is a correct statement of the law regarding the distinction between the kinds of testimony permissible from expert and lay witnesses. *Henson,* 535 N.E.2d 1189; *Buck v. State* (1983), Ind., 453 N.E.2d 993.

The court and counsel continued their colloquy following a brief recess, at which time counsel argued that two State's witnesses had given expert opinion testimony in the area of child psychological development and that therefore appellant would attempt to qualify Dr. Phipps as an expert in that area to answer their testimony. The court stated in response:

I have no problems with people expressing opinions as long as they have some knowledge concerning the facts that are presently before the Court, and [neither of those witnesses were] tendered as expert witnesses to give opinions based on any knowledge that might be given to them, but had in fact counseled with both children.

This statement, contrary to appellant's argument, does not reflect that the court required personal knowledge on the part of a proffered expert prior to reception of testimony by that witness, and the trial court was within its discretion to admit opinions from these lay witnesses if it found them sufficiently grounded on their personal observations. *Hedrick v. State* (1982), Ind., 430 N.E.2d 1150 (lay opinion by police officers concerning anal and vaginal injuries of murder victim); *Cockrum v. State* (1968), 250 Ind. 366, 234 N.E.2d 479 (lay opinion by police officers as to insanity). The court went on to state that it would not receive similar lay testimony by Dr. Phipps as she had no personal knowledge of the case on which to base her opinion, and that she was not qualified to give expert testimony in either of the areas

proposed by defense counsel. There was no error here.

Appellant's convictions are affirmed.

GIVAN, J., concurs.

DICKSON, J., concurs in result with separate opinion in which KRAHULIK, J., joins.

SHEPARD, C.J., concurs in result with separate opinion.

DICKSON, Justice, concurring in result.

I concur with the majority opinion upon all determinative issues, through and including its conclusion that the trial court did not err in finding Dr. Phipps not properly qualified to render an opinion on the subject of child psychological development.

However, as to its discussion regarding the general propriety of expert testimony upon the issue of the reliability of child testimony, I cannot join the majority. Not only does such discussion constitute *obiter dicta* in the present case, but it proposes, in my view, an unwise approach to a serious evidenciary problem.

The majority opinion may be read to discourage properly qualified expert testimony regarding the general capacity of young children to accurately perceive, recall, and communicate. Such a view, if followed, could exclude important relevant evidence crucial to assuring maximum reliability and accuracy in the determination of guilt.

Indiana law has long cautioned that the testimony of young children may be less reliable than that of adults. For 109 years, our statutory law recognized that "children under 10 years of age shall not be competent witnesses, unless it appears that they understand the nature and obligation of an oath." Ind.Code § 34–1–14–5 (West 1983) (repealed 1990),[1] *see also* Ind.Code § 35–37–4–6(d)(3)(C). Judicial recognition of the problem was evident in *Thomas v. State* (1958), 238 Ind. 658, 662, 154 N.E.2d 503, 506, wherein we stated:

We know through common experience and psychology that a usual attribute of children is imagination and that they are easily susceptible to suggestion. Outside ideas adopted by them easily become realities and they honestly believe their imaginings to be true.

Similarly, in *Lawrence v. State* (1984), Ind., 464 N.E.2d 923, 925, this Court observed "that there is a special problem in assessing the credibility of children who are called upon as witnesses to describe sexual conduct." This Court has also specifically noted that social scientists have expressed concern regarding the reliability of eyewitness testimony of young children. *Matthews v. State* (1987), Ind., 515 N.E.2d 1105, 1106 n. 2.

Yet case law clearly holds that a criminal conviction may rest solely on the uncorroborated testimony of a child witness, and that the credibility and reliability of such witness testimony is a matter for jury determination, *Tuggle v. State* (1984), Ind., 457 N.E.2d 1094; *Jones v. State* (1983), Ind., 445 N.E.2d 98. The critical role of witness credibility assessment was stressed by Justice DeBruler in *Lawrence*, 464 N.E.2d at 925:

It is essential to a trial of issues of fact that the trier of fact determine which witnesses are worthy of belief and which are not, and what testimony is the more reasonable and probable; that is, it must determine the credibility of the witnesses and the weight of the evidence. There is no lawful trial of fact without such an assessment by the judge or jury at an original, individual, or personal level. The law demands that those trial tactics and procedures which aid and enrich the process be encouraged, and those which hinder it be discouraged.

The capacity of young children to provide reliable testimony is not a matter upon which juries are necessarily well-versed. Parenthood is not a prerequisite to jury service, nor would experience with young children necessarily equip a juror to recognize the problems associated with such testimony. The relative lack of understanding of many jurors upon this subject lends it-

---

1. This provision was originally enacted as 1881 Ind. Acts, Spec.Sess. ch. 38, § 275, and was repealed by 1990 Ind. Acts, Pub.L. 37–1990, § 20.

self well to expert testimony as a source of valuable insight to assist the jury in its quest for truth. An expert witness may provide testimony when it is based on knowledge or experience beyond that of the average juror and it is likely that the expert's informed opinion will aid the jury. *Stewart v. State* (1988), Ind., 521 N.E.2d 675.

It is thus not surprising that other courts have allowed expert testimony to aid a jury in assessing the veracity of a victim of child sexual abuse "by generally testifying about a child's ability to separate truth from fantasy." *United States v. Azure* (8th Cir.1986), 801 F.2d 336, 340. Adopting this position, the Florida Supreme Court wisely observed:

> We recognize that expert testimony such as this, by its very nature, to some degree will tend to either bolster or refute the credibility of the child victim; however, the ultimate conclusion as to the victim's credibility always will rest with the jury. The expert will merely be equipping the jury with the knowledge necessary to make this determination.

*Tingle v. State* (1988), Fla., 536 So.2d 202, 205.

Concern regarding the capacity of young children to accurately testify is an issue whose presence has already justified this Court in permitting some accrediting of the child witness in the form of opinions from parents, teachers, and others that the child is not prone to exaggerate or fantasize. *Lawrence*, 464 N.E.2d at 925. The acknowledged presence of such issue should equally justify permitting qualified expert testimony in appropriate cases to aid the jury in understanding any developmental limitations upon the ability of young children generally to provide accurate and reliable testimony. The reasoning employed by Justice DeBruler in *Henson v. State* (1989), Ind., 535 N.E.2d 1189, 1193, applies:

> It would be fundamentally unfair to allow the use of such testimony by the State, ... and then deny its use by a defendant here.

In the present case, I agree with the majority that the trial court did not abuse its discretion in ruling that Dr. Phipps was not qualified to provide such testimony, but I do not agree that the subject matter was necessarily improper for testimony by a properly qualified expert.

KRAHULIK, J., concurs.

SHEPARD, Chief Justice, concurring in result.

The debate between my colleagues about expert testimony aimed at assisting a jury in determining the credibility of children represents an important question. In this case, however, the trial judge correctly ruled that the expert who was offered for this purpose was not qualified on the subject. That being so, I do not see the question as squarely presented in this appeal. The issue would be better resolved when presented in a case with a qualified expert and a better record which contains evidence about the benefits of such expert testimony.